Case No. 14-4765

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

BANK OF AMERICA, N.A., successor in interest to MERRILL LYNCH CREDIT
CORPORATION, by and through its servicer and attorney-in-fact, PHH
MORTGAGE CORPORATION,

     Plaintiff-Appellee,

v.

KIRBY WESTHEIMER,

     Defendant-Appellant.

**On Appeal From the Final Judgment and Orders of the United States District
Court For the District of New Jersey, Case No. 12-cv-07080-JAP**

## BRIEF OF DEFENDANT-APPELLANT, KIRBY WESTHEIMER
## AND APPENDIX VOLUME I OF V (A-1 to A-28)

LUM, DRASCO & POSITAN LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068-1049
(973) 403-9000
Attorney for Defendant-Appellant, Kirby
Westheimer

# TABLE OF CONTENTS

**PAGE**

TABLE OF CITATIONS ........................................................................... III

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION .... 1

STATEMENT OF ISSUES ........................................................................ 1

STATEMENT OF THE CASE ................................................................... 2

      A.    Westheimer's Property and the Construction Project and Loan. ................................................................................... 2

      B.    MLCC's Grossly Deficient Inspections and Disbursement of Loan Proceeds. ........................................................... 4

      C.    The Catalogued Substantial Deficiencies In Construction Missed By MLCC's Inspections. ......................................... 6

      D.    The Foreclosure Litigation By MLCC's Successor, BOA ......... 9

      E.    The District Court's Final Judgment and Orders Under Review. ................................................................................ 9

STATEMENT OF RELATED CASES AND PROCEEDINGS ........................... 10

STANDARD OF REVIEW ....................................................................... 10

SUMMARY OF ARGUMENT ................................................................... 13

LEGAL ARGUMENT ........................................................................... 14

POINT I ............................................................................................... 14

    THE DISTRICT COURT ERRONEOUSLY CONCLUDED THAT
    MLCC'S GROSSLY DEFICIENT INSPECTIONS AND
    OVERSIGHT OF THE DISBURSEMENT OF LOAN PROCEEDS
    DID NOT BREACH ANY DUTY TO WESTHEIMER AND
    THAT THE COUNTERCLAIM FAILED TO STATE A CLAIM
    FOR RELIEF. .................................................................................. 14

POINT II .............................................................................................. 21

    THE DISTRICT COURT ERRED IN GRANTING SUMMARY
    JUDGMENT PERMITTING FORECLOSURE BY BOA AND IN
    ENTERING FINAL JUDGMENT OF FORECLOSURE
    BECAUSE THERE EXIST MATERIAL FACTUAL ISSUES
    REGARDING MLCC'S DUTIES TO WESTHEIMER AND BOA
    IS NOT ENTITLED TO A JUDGMENT AS A MATTER OF
    LAW. .............................................................................................. 21

CONCLUSION .................................................................................... 24

# TABLE OF CITATIONS

**PAGE**

## Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986) ......................... 12

Bell Atlantic Corp. v. Twombly, 550 U.S. 110, 118, 120 S.Ct. 1955, 1974,
167 L.Ed.2d 929 (2007) ...................................................................... 11

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ................................................ 12

Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert.
denied, 429 U.S. 1038 (1977) ................................................................ 12

Haft v. Dart Group Corp., 841 F.Supp. 549, 562 (D.Del. 1993) ............................ 12

Hedges v. United States, 404 F. 3d 744, 750 (3d Cir. 2005) .................................. 21

Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993) ............. 12

Klein v. First Edina Nat'l Bank, 293 Minn. 418, 422 196 N.W.2d 619, 623
(1972) ................................................................................................ 16

Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574,
587 (1986) ............................................................................................. 11

McTernan v. City of New York, Penn., 577 F.3d 521, 526 (3d Cir. 2009) ........... 11

New York v. Hill, 528 U.S. 110, 118, 120 S.Ct. 659, 145 L.Ed. 2d 560
(2000) ................................................................................................. 21

Parker v. Columbia Bank, 91 Md.App. 346, 369, 604 A.2d 521, 532-33
(Md.Ct.App.) ..................................................................................... 16

Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) ..................... 11

Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002) ................. 11

Strawn v. Caruso 140 N.J. 43, at 60-61 (1995) ..................................................... 16

United Jersey Bank v. Kensey, 306 N.J.Super. 540, 552 (App.Div. 1997) 14, 15, 16

**Statutes**

28 U.S.C. § 1291 ..................................................................................... 1

28 U.S.C. §1331 ...................................................................................... 1

28 U.S.C. §1332 ...................................................................................... 1

F.R.Civ.P. 56(c) .................................................................................... 11

F.R.Civ.P. 56(e) .................................................................................... 12

Fed.R.Civ.P. 12(b)(6) ........................................................................... 10

N.J.Ct.R. 4:64-5 .................................................................................... 22

N.J.S.A. 2A:40-53 ................................................................................. 22

**Other Authorities**

Cecil J. Hunt, II, The Price of Trust: An Examination of Fiduciary Duty
   and the Lender-Borrower Relationship, 29 Wake Forest L.Rev. at 739-
   78) ...................................................................................................... 16

Restatement (Second) of Torts §551 (1977 & Supp. 1977) ............ 15, 16

Scott T. Tross, New Jersey Foreclosure Law and Practice, §1 at 162-165
   (2001) ................................................................................................ 22

**Rules**

Rule 12(b)(6) ......................................................................................... 11

# INDEX TO APPENDIX

## VOLUME I
### (Bound with Brief)

**PAGE**

Notice of Appeal, filed December 16, 2014 ......................................................... A-1

Order, entered February 28, 2014 Granting Plaintiff's Motion to Dismiss
    Counterclaim and Entering Summary Judgment on Complaint ...................... A-3

Opinion by Hon. Joel A. Pisano, U.S.D.J., entered February 28, 2014 ............... A-4

Order and Judgment, entered November 18, 2014 Granting Plaintiff's
    Motion for Final Judgment of Foreclosure ..................................................... A-24

Order entered January 28, 2015 Granting Defendant's Motion to
    Stay Pending Appeal ....................................................................................... A-27

## VOLUME II

Docket Sheet from U.S. District Court for the District of New Jersey,
    Case No. 12-CV-07080 .................................................................................... A-29

Complaint, filed November 14, 2012 .................................................................. A-38

    Exhibit A:  Construction Loan Agreement, dated September 1, 2008 .......... A-45

    Exhibit B:  Adjustable Rate Note, dated September 15, 2005 ...................... A-55

    Exhibit C:  Mortgage dated, September 15, 2008 ......................................... A-63

    Exhibit D:  Notice of Intention to Accelerate and Foreclose,
    dated May 21, 2012 ....................................................................................... A-86

Answer and Counterclaim, filed February 15, 2013 .......................................... A-94

Motion to Dismiss Counterclaim and for Summary Judgment,
    filed June 7, 2013 ........................................................................................... A-137

Declaration of Jonathan P. Vuotto in Support of Motion to Dismiss/Motion for Summary Judgment, filed June 7, 2013 ........................................................ A-139

Exhibit A: Complaint, filed June 7, 2013
[Reproduced at A-38 to A-93]

Exhibit B: Answer and Counterclaim, filed February 15, 2014
[Reproduced at A-94 to A-136]

Local Rule 56.1 Statement by Plaintiff, filed June 7, 2013 .............................. A-141

Substitution of Attorney filed October 15, 2013 ............................................. A-144

Local Rule 56.1 Statement by Defendant, filed December 16, 2013 ............... A-145

Declaration of Kirby Westheimer in Opposition to Motion to Dismiss/Motion For Summary Judgment, filed December 16, 2013 ..................................... A-151

Exhibit A: Correspondence from Merrill Lynch Credit Corporation, dated June 30, 2008 ................................................................................. A-159

Exhibit B: Correspondence from Carl F. Walter, III, A.I.A, N.C.A.R.B., dated June 27, 2013 ..................................................................... A-162

Declaration of Myra DiDonato in Opposition to Motion to Dismiss/Motion For Summary Judgment, filed December 16, 2013 ..................................... A-165

Exhibit A: Cost Breakdown Detail report dated January 28, 2010 ............ A-168

Motion for Final Judgment of Foreclosure, filed May 19, 2014 ..................... A-173

Motion to Stay Pending Appeal and for a Waiver or Modification of Supersedeas Bond, filed January 13, 2015 ................................................. A-175

## Volume III

Letter from Paul A. Sandars, III, Esq. submitting Deficiency List,
    filed December 17, 2013 ............................................................... A-178

Deficiency List, Volume I ................................................................. A-179

## Volume IV

Deficiency List, Volume II................................................................ A-267

## Volume V

[Deficiency List, Volume II continued from Appendix Volumes IV] ............. A-603

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The subject matter jurisdiction over this action arises under 28 U.S.C. §1332 because the parties have diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

Appellate jurisdiction is based on 28 U.S.C. § 1291. A final judgment was entered in this matter on November 18, 2014. (A-24; DDE #54). The Notice of Appeal was timely filed on December 16, 2014. (A-1; DDE #56).

## STATEMENT OF ISSUES

1. Whether the District Court erred in granting Plaintiff's Motion to Dismiss Defendant's Counterclaim by failing to determine that this case presents special circumstances that warrant the imposition of a fiduciary duty on Plaintiff's predecessor to not act in a grossly negligent manner in conducting inspections of the construction project and authorizing disbursements of the construction loan proceeds based upon the grossly deficient inspections. Raised: Defendant's Brief in Opposition to Motion to Dismiss/Motion for Summary Judgment (DDE #42).

2. Whether the District Court erred in granting plaintiff's Motion to Dismiss Westheimer's Counterclaim because there are material issues of fact as to the grossly deficient and negligent inspections of the construction project and

release of construction loan proceeds by Plaintiff's predecessor.    Raised:

Defendant's Brief in Opposition to Motion to Dismiss/Motion for Summary

Judgment (DDE #42).

## STATEMENT OF THE CASE

### A.    Westheimer's Property and the Construction Project and Loan.

Defendant-Appellant, Kirby Westheimer ("Westheimer") is the owner of a

home located at 210 Mercer Street, Princeton, New Jersey. (A-151; DDE #42-2 at

p.1). The house is a well-known landmark in Princeton and a historically

significant home. (A-104; DDE #8 at p.11).

In 2006, Defendant started a construction project to make substantial

structural alterations, additions and modifications to his home (the "Project"). (A-

152; DDE #42-2 at p.2). Westheimer is a 75 year old retiree who has never had

prior experience with construction projects and financing. (A-10; DDE #8 at p.15,

¶14). He met with and engaged several professionals and contractors to provide

services, labor and materials for the project. (A-109; DDE #8 at p.16 ¶20).

Stephen Rhoads, LLC ("Rhoads") was hired to perform professional design

services and to serve as construction manager for the project. Id.

From July 2007 to August 2008, Westheimer paid the contractors on the

project out of his personal funds. (A-109; DDE #8 at p.1, ¶21). The total of these

payments was approximately $1,016,585.55. Id. In June 2008, it became apparent to Westheimer and Rhoads that additional funding would be necessary to complete the Project and Westheimer sought financing from Merrill Lynch Credit Corporation ("MLCC") for completion of the Project through a construction loan. (A-152; DDE #42-2 at p.2, ¶¶6-7). After disbursement of the proceeds, the construction loan would automatically convert to permanent financing. (A-109; DDE #8 at p. 16, ¶23).

From the spring of 2008 through September 2008, Westheimer had several communications and meetings with MLCC employees and representatives to negotiate the terms and conditions of the construction loan. During these discussions, Westheimer advised MLCC that the estimated cost of the Project was approximately $2.5 million of which he had already paid more than $1.0 million from his personal funds. (A-110, DDE #8 at p. 17, ¶27).

On September 15, 2008, Westheimer entered into a Construction Loan Agreement with MLCC as the Lender. (A-45; DDE #1 at p. 9). The aggregate principal amount of the Loan was $1,500,000. The estimated total construction costs were listed in the Agreement as $2,567,123. The "Construction Period" was defined as the Period ending March 31, 2010.

The Construction Loan Agreement provided a system governing the disbursement of the Loan proceeds. Specifically, before the Lender would

disburse funds it required an inspection of the Project and a signed request for disbursement from the borrower. (A-48; DDE #1 at p.11, §2.4). Pursuant to those provisions, MLCC was supposed to conduct regular inspections of the Project.

On a number of occasions, MLCC refused to disburse funds until an inspection had been completed. It was Westheimer's understanding that the inspection procedure would ensure that the Project was proceeding in a timely fashion, "on budget" and in compliance with the plans and specifications for the Project. As stated in the Counterclaim, Westheimer,

> understood and was led to believe by MLCC that he and MLCC collectively shared and were proceeding upon a mutual and common interest not only in completing the Project timely with an anticipated completion date of March 31, 2010 (the defined "Construction Period" under Article 1 of the Agreement), but also at an estimated cost of $2,568,123.00 (which amount represented the defined "construction costs" also established under Article 1 of the Agreement). Thus, it was not only of paramount and overriding importance to Kirby in entering into the Loan Documents, but his understanding and expectation, as well that as a result of MLCC's Administration of the Loan, there would be strict compliance with the "Construction Period" deadline of March 31, 2010 and the Construction Costs of $2,568,123.00.

(A-118 to A-119; DDE #8 at pp.25-26, ¶47).

## B.    MLCC's Grossly Deficient Inspections and Disbursement of Loan Proceeds.

However, the inspections that were actually undertaken by MLCC during

the Project were grossly and recklessly inadequate and in effect a sham.   MLCC never provided copies of the inspection reports to Westheimer, despite his repeated requests for these reports.    Further, in discussions with MLCC representative about the inspections, those MLCC agents made statements that based on the inspections everything was "fine" and the inspections were "looking good".   (A-165; DDE #42-5 at p.2, ¶6).

The inspections conducted by MLCC were often very brief.  There was no continuity in the inspections because MLCC used multiple different "inspectors" instead of having a single individual oversee the inspections who could properly assess the inspection results and the history of the pace of construction in order to determine whether the anticipated completion date of March 31, 2010 remained possible an achievable.  (A-121; DDE #8 at p. 28, ¶57).  Due to this lack of continuity, MLCC was blind to the disruptions and delays impairing the project and causing delay to its timely and on-budget completion.  (A-122; DDE #8 at p. 29, ¶56).  MLCC continued to disburse loan proceeds to the various contractors despite the fact that its inspections, if properly performed, would have revealed that much of the work was deficient and incomplete.

The utter and complete failure of MLCC to conduct proper inspections to ensure that the project was proceeding on time and on budget is revealed in the stark nature of the deficiencies in the Project that have been cataloged by

Defendant's experts.    Westheimer was ultimately compelled to file a lawsuit in New Jersey Superior Court against the various professionals, contractors and subcontractors working on the Project.  (A-156; DDE #42-2 at p. 6, ¶19).

### C.    The Catalogued Substantial Deficiencies In Construction Missed By MLCC's Inspections.

In connection with the State Court action, Westheimer had prepared on his Behalf a "Preliminary Deficiency List" of the incomplete and defective work for the Project.  ("Deficiency List"). (A-156 to A-157; DDE #42-2 at pp.6-7, ¶¶20-21; A178; A-179; DDE #43; A-267). The Deficiency List was prepared and compiled by Carl F. Walter, III, AIA, NLARB, a New Jersey licensed forensic architect with the Firm of Wagner, Hohns, Inglis, Inc.  (A-163 to A-164; DDE #42-4 at pp.2-3). This Deficiency List is comprised of two (2) volumes containing more than two thousand (2000) photographs of the existing conditions and nearly one hundred (100) spreadsheets of the incomplete and defective work that was identified in an inspection in June 2012.   The incomplete work cataloged represents work not completed according to the scope of work required by the plans and specifications for the Project.  The defective work identified in the Report represents work not completed according to the NJUCC, International Residential Code ("IRC") and construction industry standards for good workmanship.  Incomplete and defective work also includes unresolved errors, omissions and violations of the building

code.

Volume I of the Deficiency Report provides deficiency lists for the exterior element of the Residence. (A-179). This volume provides an "Exterior Survey & Photo Log" of the site with detailed descriptions of the exterior photos documenting the incomplete and defective work. Volume I also provides detailed charts listing and describing the incomplete and defective nature of exterior work. This included incomplete/defective work as to the Entry Portico, Entry Plaza, Piazza, Living Room Terrace, Kitchen Terrace, Fountain Plaza, Folly and Storage Shed and Pergola.

Volume I also provides detailed deficiency lists for certain interior elements (identified by Photo Tab #) regarding the Basement Floor, Garage, Garage Hall, Terrace Hall, Garage Storage, Stair and Elevator Tower and Elevator Equipment, Mean's Lounge and Bar, Basement Hall, Wine Cellar, Boiler Room, Service Laundry, Men's Bath, Basement Stair, Basement Storage, HVAC and Storage, Electrical Room, Crawl Space, Garden Shed, Entry Foyer and Stair, Morning Room, Living Room, Gallery, Library, Men's Room, Entry Hall, Stair 2 and Coat Closet.

Volume II of the Deficiency Report provides a detailed, room by room, description (identified by Photo Tab #) of the incomplete and defective work inside the Residence. (A-267). This sets forth the incomplete/defective work in

essentially all of the rooms of the residence. The Deficiency lists for the interior elements shows defects and incomplete work in the Basement Level, First Floor, Second Floor and Third Floor of the House.

Despite the extensive nature of the incomplete and defective work as set forth in the Deficiency Report, MLCC's inspectors, after allegedly performing inspections, continually approved the work and, based upon their "inspections" MLCC authorized disbursements of the loan proceeds. The Cost Report for the Project created by MLCC states that 89.57% of the total Loan proceeds had been paid, when in reality the work was only 50% completed -- a significant discrepancy. (A-167 to A-168; DDE #4-5 at p.3, ¶¶7-8). Further, the quality of the work as shown in the detailed list of incomplete and deficient work in the Deficiency Report was severely lacking and should have compelled MLCC's "inspectors" to refuse authorization of the disbursements of the Loan Proceeds. In this foreclosure action, BOA's Complaint alleges that Westheimer has defaulted on the Loan because "he has failed to complete the improvements to the Property in accordance with the Construction Loan Agreement." (A-40; DDE #1 at p.3, ¶14). BOA contends that this "default" permits it for foreclose on the property." (A-42; DDE #1 at p.5, ¶¶25-27). However, as set forth above, the Bank was complicit in the events giving rise to the alleged default. As such, Westheimer's Counterclaims are properly stated and he has valid defenses to the foreclosure

claim that cannot be adjudicated on a Motion to Dismiss/Summary Judgment Motion, particularly where no discovery has been taken.

### D.  The Foreclosure Litigation By MLCC's Successor, BOA.

On November 14, 2012, Plaintiff, Bank of America, N.A., successor in interest to Merrill Lynch Credit Corporation, by and through its servicer and attorney-in-fact, PHH Mortgage Corporation ("BOA") filed a Complaint seeking foreclosure of the Mortgaged Premises owned by Defendant, Kirby Westheimer (Westheimer).  (A-38; DDE #1).  On February 15, 2013, Westheimer filed an Answer, Affirmative Defenses and Counterclaim. (A-94; DDE #8). The basis of the Counterclaim was BOA's gross negligence in inspecting and/or failure to inspect the Mortgaged Premises before authorizing disbursements under the construction loan which was secured by the Mortgage in issue.

### E.  The District Court's Final Judgment and Orders Under Review.

Prior to any discovery being conducted BOA filed a Motion to Dismiss Westheimer's Counterclaims and Motion for Summary Judgment on the foreclosure Complaint.  On February 28, 2014, the Court entered an Order and Opinion granting the Motion for Summary Judgment by BOA, pursuant to which the Court dismissed Westheimer's Counterclaims and granted summary judgment to BOA for foreclosure of the subject property.  (A-3, DDE #47; A-4, DDE #46).

9

On November 18, 2014, the Court entered a Final Judgment of Foreclosure in this action. (A-24; DDE #54). The Judgment adjudicated that BOA was entitled to the sum of $1,260,446.72 consisting of $1,252,946.72 owed on the Note as of May 15, 2014 together with taxed costs, including counsel fees of $7,500.00. The Final Judgment further ordered that the mortgaged premises were to be sold to raise moneys to satisfy the amount due BOA and that the United States Marshal Service was to hold the sale in accordance with applicable New Jersey law, including the New Jersey Fair Foreclosure Act. On December 18, 2014, Westheimer timely filed a Notice of Appeal in this matter. (A-1; DDE #56). Subsequently, the District Court entered an Order staying enforcement of the Judgment pending appeal. (A-27; DDE #64).

## STATEMENT OF RELATED CASES AND PROCEEDINGS

The instant action has not been before this Court previously. Counsel is unaware of any other case or proceeding which is related, pending or contemplated, or about to be presented before this Court or any other court or agency, state or federal, which involves the subject matter of this action.

## STANDARD OF REVIEW

Westheimer's Counterclaims were dismissed by the District Court on BOA's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The Rule provides that the district court may dismiss a complaint "for failure to state a claim upon

which relief can be granted." In deciding such a motion, the district court must "accept all factual allegations as true, construe the complaint in the light most favorable to plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)(quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). A motion to dismiss 'under Rule 12(b)(6) should be granted only if plaintiff cannot articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 110, 118, 120 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The standard of review of a district court's dismissal under Rule 12(b)(6) is de novo. McTernan v. City of New York, Penn., 577 F.3d 521, 526 (3d Cir. 2009).

Additionally, the District Court granted BOA's Motion for Summary Judgment on the Complaint concluding that BOA was entitled to foreclose on the subject property and granted BOA Final Judgment of Foreclosure. Under the applicable standard of review, the moving party must show that there are no genuine factual issues for trial and it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In evaluating a summary judgment motion, a district court must view all evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in favor of the non-moving party. Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Issues of

11

intent and good faith or evaluations of credibility are generally not appropriate for summary judgment. See Haft v. Dart Group Corp., 841 F.Supp. 549, 562 (D.Del. 1993). The district court may not weigh the evidence or decide issues of fact at the summary judgment stage. See Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993).

The burden of demonstrating the absence of genuine issues of material facts rests initially upon the moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden is discharged by showing "the absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has made a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." F.R.Civ.P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). The materiality of a disputed fact is determined by the substantive law. See id. at 248. An issue exists for trial where the nonmoving party demonstrates sufficient evidence in its favor such that a reasonable jury could return a verdict in its favor. See id. at 249. The Court of Appeals uses the same standard of review for an order granting summary judgment as employed by the district court. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977).

## SUMMARY OF ARGUMENT

The issue in this case is whether the lender on a construction loan breached a duty to the property owner where its periodic inspections were utterly negligent, deficient and incompetent, and the lender recklessly allowed loan proceeds to be disbursed for work that was incomplete or defective. The District Court ruled that the inspections were solely for the lender's own benefit and, thus, the lender owed no duty to the property owner. Respectfully, this determination ignores the fact that representatives of the lender made express representations and assurances to Westheimer that the inspections were acceptable and implied that the inspections were being performed by competent individuals. Thus, Westheimer was led to believe that the Project was proceeding according to schedule, that the loan proceeds were being properly disbursed and that the construction was being performed in accordance with the plans and specifications.

Under the circumstances, it is submitted that there are special conditions present that warrant imposition of a duty upon BOA, which was breached in this case and that the District Court erred in dismissing Westheimer's Counterclaim and granting summary judgment to BOA and entering final judgment of foreclosure.

## LEGAL ARGUMENT

### POINT I

**THE DISTRICT COURT ERRONEOUSLY CONCLUDED THAT MLCC'S GROSSLY DEFICIENT INSPECTIONS AND OVERSIGHT OF THE DISBURSEMENT OF LOAN PROCEEDS DID NOT BREACH ANY DUTY TO WESTHEIMER AND THAT THE COUNTERCLAIM FAILED TO STATE A CLAIM FOR RELIEF.**

In this case, the premise of the District Court's decision is that the Lender has absolutely no duty to the property owner with regard to the performance of the inspections and draw procedure. However, under the circumstances of this case, where the Lender was actively involved in the Project through its inspections and specifically assured that the inspections were "fine" and "looking good," while refusing to provide Westheimer with copies of the inspection reports, there are "special circumstances" which warrant the imposition of a fiduciary duty upon BOA, which duty has clearly been breached.

Under New Jersey Law, there is no presumed fiduciary relationship between a bank and its customer. See United Jersey Bank v. Kensey, 306 N.J.Super. 540, 552 (App.Div. 1997). Accordingly, there is a "general presumption that the relationship between lenders and borrowers is conducted at arms-length, and the parties are each acting in their own interest." Id. at 553 (internal quotations and citations omitted). However, a fiduciary relationship between lender and borrower

may arise from the specific facts regarding the parties' transaction and their relationship.

In Kensey, the Court stated that a fiduciary relationship may arise where one of the parties "expressly reposes a trust or confidence in the other or because of the circumstances of the transaction and the parties' relationship 'such a trust or confidence is . . . necessarily implied.'" Kensey, supra, at 553 (citations omitted). Thus, "special circumstances may warrant imposition of a fiduciary obligation in situations where "the lender encouraged the borrower to repose special trust or confidence in its advice, thereby inducing the borrower's reliance." Kensey, supra, 306, N.J.Super. at 554-55. In this regard, the Kensey court recognized "the growing trend to impose a duty to disclose in many circumstances in which silence historically sufficed." Id. at 553-554 (citations omitted). This trend is recognized in the Restatement (Second) of Torts §551 (1977 & Supp. 1977). Id. at 554.

Under the Restatement, a duty is imposed upon a party to an agreement to disclose "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake . . . and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." Kensey, supra, 306 N.J.Super. at 554 (quoting Comment 1 to Restatement (Second) of Torts §551, Subsection (2). The Comment further observes that "the situation envisioned is one in which the advantage taken

of the Plaintiff's ignorance is 'so shocking in the ethical sense of the community, and is so extreme and unfair, as to the amount to a form of swindling . . .'" Id. The Supreme Court of New Jersey has adopted this interpretation of the Restatement. Strawn v. Caruso 140 N.J. 43, at 60-61 (1995).

Therefore, there can be circumstances where the lender's conduct in withholding information is so extreme and egregious that liability is imposed. As the Appellate Division further noted:

> The position adopted in the Restatement is reflected in a lengthening line of decisions holding banks and other lending institutions liable to their customers for gross acts of misconduct and deceit or, where special circumstances may exist where the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and relying on the bank [so] to counsel and inform him.'".

Kensey, supra, 306 N.J.Super. at 554 (quoting Parker v. Columbia Bank, 91 Md.App. 346, 369, 604 A.2d 521, 532-33 (Md.Ct.App.)(quoting Klein v. First Edina Nat'l Bank, 293 Minn. 418, 422 196 N.W.2d 619, 623 (1972)). The "common thread" running through this "lengthening line of decisions" is "that the lender encouraged the borrower to repose special trust or confidence in its advice thereby inducing the borrower's reliance." Kensey, supra, 306 N.J.Super. at 554-55 (citing Cecil J. Hunt, II, The Price of Trust: An Examination of Fiduciary Duty and the Lender-Borrower Relationship, 29 Wake Forest L.Rev. at 739-78).

When the Counterclaim by Westheimer is viewed in its most favorable light,

the allegations therein may be interpreted as asserting that the conduct by MLCC

was so unfair and extreme that there were special circumstances giving rise to a

claim for breach of fiduciary duty.  For example, in Paragraph 7, it is alleged:

> As a material inducement for Kirby to agree to the Loan,
> MLCC through its Agents . . . made repeated
> representations, assurances and promises (collectively,
> Representations) to him that its Agents were charged
> with the responsibility to administer, oversee, supervise
> and monitor the Loan, and in particular, assure
> compliance with and adherence to all Loan provisions
> and MLCC's practices and procedures as explained to
> Kirby (collectively, "Loan Procedures").  The
> Representations were made so as to not jeopardize the
> Project's viability, including its timely completion and
> "on budget" in accordance with its estimated costs to
> complete.

(A-106; DDE #8 at p.13, ¶7).  The Counterclaim also points out that among the

Loan Procedures was the requirement that a Construction Loan Draw Request

Affidavit be submitted to the Lender and/or its agents for its "review, reflective,

among other things, of the amounts of labor and materials extended during the

applicable construction time period, and most importantly, that Project completion

was proceeding timely, on schedule, and in line with its anticipated completion

date."  (A-106; DDE #8 at p.13, ¶8).  The Counterclaim further asserts that the

inspection procedures under the Loan were included "to induce [Westheimer] to

enter into the Loan . . . ."  (A-106 to A-107; DDE #8 at pp.13-14, ¶9).

[Westheimer] asserts that the representations made, particularly with regard to the

inspections and draw affidavits, "were intended to assure Kirby that the Project was proceeding timely, on schedule, and towards its anticipated completion date in accordance with the estimated cost to complete." Id.

Further, because Westheimer invested more than $1.0 million of his own funds into the Project, and that Westheimer "reasonably believed and relied upon the Representations that the Loan Procedures would not only act to safeguard his investment, but also as a means by which to ensure the timely competition of the project at or under its estimated cost." (A-107; DDE #8 at p.14). Thus, it is asserted that Westheimer would not have invested his own monies "without being sufficiently assured and promised by MLCC and its Agents that at all times its/their Administration of the Loan would be professionally and responsibly handled so as to not jeopardize his substantial personal investment, as well as the timely and 'on budget' Completion of the Project." (A-107; DDE #108 at p.14, ¶11).

The premise of the Counterclaims is that MLCC improperly conducted inspections that were required prior to issuance of draws against the construction loan. These allegations are summarized in Paragraph 4 of the Counterclaim which states:

> . . . the Counterclaim arises out of the negligent and otherwise improper manner and means which MLCC inspected and/or failed to inspect the Project as a precondition of its disbursement of the Loan proceeds to

Kirby, including the Loan's Administration (said term being defined in Affirmative Defenses). Included in such negligent and/or improper actions and conduct by MLLC were its repeated failures to properly review and analyze the extensive documentation provided on Kirby's behalf to MLCC in connection with the disbursement of the loan proceeds, and in the process, its failure to realize and inform Kirby that the project could not be timely finished in accordance with its estimated costs and completion date for same as each are more particularly defined and set forth in the Loan Documents.

(A-105; DDE #8 at p.12, ¶4). The Counterclaim further alleges that the "Loan Procedures" in connection with disbursement of the Loan proceeds and the regular site inspections were to induce Kirby to enter into the Loan and it is alleged: ". . . in particular, the Loan Proceeds which respect to the Inspections and Draw Affidavits, individually as well as collectively were intended to assure Kirby that the Project was proceeding timely, on schedule, and towards its anticipated completion date in accordance with the estimated cost to complete. In other words, Plaintiff undertook the proverbial 'belt and suspenders' approach to win Kirby's trust and his agreement to enter into the Loan." (A-106 to A-107; DDE #8 at pp.13-14, ¶9).

Furthermore, during the construction process, Westheimer was given assurances by MLCC's representative that the inspections demonstrated that the construction was proceeding on schedule. No effort, however, was made by the MLCC to suggest that the work on the project was falling behind, was in disarray,

or was incomplete and deficient.

If MLCC had conducted adequate inspections of the Project, it would have determined and advised Westheimer that the Project's anticipated completion date and the construction costs were not on track. Had MLCC not done perfunctory inspections, it would have determined that the percentage of completion for the Project, as measured against the anticipated completion date and the proposed costs could not be complied with as anticipated under the Loan documents. Further, if MLCC had performed adequate and thorough inspections of the Project, it would have determined that much of the work was obviously shoddy and incomplete. The deficient and incomplete work that has been cataloged in the Deficiency Report demonstrates that Plaintiff's inspections were effectively a sham and that its representations that everything were "fine" and "looking good" was inherently misleading in view of the real status of the Project.

In sum, when the facts of the Counterclaim are accepted as true and construed in the light most favorable to Westheimer, a reasonable reading of the Counterclaim shows that Westheimer is entitled to relief because there are special circumstances that remove this case from the ordinary lender-borrower relationship due to Plaintiff's gross misconduct. Thus, BOA's Motion to Dismiss the Counterclaim should have been denied by the District Court.

In the alternative, Westheimer submits that in the event this Court were to

determine that the allegations in the Counterclaim are not sufficiently specific, he should have been given leave to seek the opportunity to file an amended Counterclaim in this matter. See New York v. Hill, 528 U.S. 110, 118, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000)(characterizing dismissal with prejudice as a "harsh remedy."). Thus, the party seeking dismissal "bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F. 3d 744, 750 (3d Cir. 2005).

## POINT II

**THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT PERMITTING FORECLOSURE BY BOA AND IN ENTERING FINAL JUDGMENT OF FORECLOSURE BECAUSE THERE EXIST MATERIAL FACTUAL ISSUES REGARDING MLCC'S DUTIES TO WESTHEIMER AND BOA IS NOT ENTITLED TO A JUDGMENT AS A MATTER OF LAW.**

The District Court also granted Summary Judgment in favor of BOA on its foreclosure claim based on the review that Westheimer's Affirmative Defenses to the foreclosure complaint allege the same theories as the Counterclaim. To the contrary, Westheimer pled sufficient facts in support of his defenses at this early stage of the litigation where no discovery has been undertaken. Further, as argued above, the theories espoused in Westheimer's Affirmative Defenses and Counterclaims are properly stated and not legally deficient. Thus, the District

Court erroneously concluded that BOA was entitled to a judgment as a matter of law.

BOA's foreclosure claim was brought under the New Jersey Fair Foreclosure Act, N.J.S.A. 2A:40-53 to -68 ("Act"),  which establishes "the basis for the foreclosure of mortgages." Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 186 NJ 99, 106 n.2 (2006).  The Act "was designed to make clear the rights and remedies of both borrowers and lenders prior to and throughout the foreclosure process." Wells Fargo Home Mortgage, Inc. v. Stull, 378 N.J. Super. 449, 456 (App.Div. 2005).  Under New Jersey Law, the borrower is entitled to bring meritorious counterclaims that are germane to the foreclosure action.  See N.J.Ct.R. 4:64-5; Scott T. Tross, New Jersey Foreclosure Law and Practice, §1 at 162-165 (2001).  Here, the Counterclaims brought by Westheimer, which are embodied in his Affirmative Defenses, are clearly "germane."  Specifically, Westheimer's claims and defenses directly arise from and relate to the Mortgage upon which BOA seeks to foreclose.

The foreclosure claim asserted by the BOA is based upon the alleged "default" under the Loan Documents arising from the failure "to complete the improvements to the property in accordance with the Construction Loan Agreement."  (A-40; DDE #1 at p.3, ¶14).  As argued above in Point I, supra, BOA helped create the very conditions that led to the "default."  Westheimer's

expert has cataloged the numerous deficiencies in the construction of the Project. (A-179, A-267). There are a vast number of items of incomplete or totally deficient work on the Project that have been identified. Despite the staggering nature of these deficiencies, MLCC's inspectors continued to approve draws and distributions of the Loan proceeds. If MLCC's inspectors had not been "asleep at the switch," and they had refused to fund the shoddy and incomplete work, Wertheimer would be in a very different position and the "paper" default would have been avoided. Westheimer submits that it is unfair and inequitable to allow BOA to take advantage of its utter incompetence and recklessness and now foreclose based on a "default" it helped create.

Moreover, Wertheimer never had the benefit of taking any discovery from BOA in this case. Indeed, one of the key pieces of evidence in this case -- the MLCC's own inspection reports -- were never provided to Wertheimer by BOA in this case.[1] In fact, Westheimer asked for such reports for quite a long time prior to this case and BOA refused to turn them over. Given that the foreclosure claim is

---

[1] Recently, in connection with the State Court action against his professional and contractors, Westheimer finally received copies of the MLCC reports. Review of these voluminous materials clearly establish that MLCC's inspections were a sham and utterly deficient. Because these materials were provided to Westheimer several months after the District Court entered Final Judgment of Foreclosure, these reports were unavailable to Westheimer in opposing BOA's Motion to Dismiss and Motion for Summary Judgment.

presented on a motion for summary judgment, the absence of discovery warrants denial of the motion.

In sum, Westheimer submits that the record presents factual issues that are intertwined with issues of credibility that must be resolved by the jury. As noted above, there are a number of issues concerning MLCC's deficient, sham inspections of the Project and failure to advise Westheimer about the true state of the Project. Therefore, Summary Judgment granting foreclosure was inappropriate, especially in view of the fact that the parties had not undertaken any discovery in this case.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully request that the District Court's Order granting BOA's Motion to Dismiss the Counterclaim and granting the Motion for Summary Judgment on the Complaint and the Final Judgment of Foreclosure be reversed and the matter remanded to the District Court.

**LUM, DRASCO & POSITAN LLC**
Attorney for Defendant-Appellant,
Kirby Westheimer

/s *Paul A. Sandars, III*
PAUL A. SANDARS, III

DATED: April 20, 2015

## COMBINED CERTIFICATION OF COMPLIANCE

Kevin J. O'Connor, an Attorney-at-Law of the State of New Jersey and of full age, hereby certifies as follows:

1.      The Brief submitted in this matter on behalf of Defendant-Appellant, compiles with the page limitation of Fed.R.App.P. 32(a)(7)(A) because it contains no more than 30 pages; complies with the type-volume limitation of Rule 32(a)(7)(B)(i) because it contains no more than 7,000 words; complies with Rule 32(a)(5)(A) because it uses a 14 point Times New Roman font; complies with Rule 32(a)(4) because it is double spaced, with the required margins on appropriate 8.5 by 11.0 inch paper.

2.      The electronic version of Defendant's Brief identical to the hard copy of said Brief.   The electronic version of this Brief was checked for computer viruses using McAfee Virus Scan Enterprise prior to transmittal.

3.      Defendant's Brief and Volume I of the Appendix was filed electronically on May 1, 2015 with the Office of the Clerk, U.S. Court of Appeals for the Third Circuit, 21400 U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106-1790.

4.      Six (6) paper copies of Defendant's Brief and Volume I of the Appendix and four (4) copies of the Volume II to V of the Appendix were submitted for filing with the Office of the Clerk via Federal Express on May 1,

2015 and two (2) copies of each were served on Jonathan P. Vuotto, Esq., counsel for Appellee. Counsel for Appellee was electronically served with Defendant's Appendix via the Court's CM/ECF system.

5.    I am a member in good standing of the Court of Appeals for the Third Circuit, having been admitted to practice before the Court in 1994.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


                                        /s/ Kevin J. O'Connor
                                        KEVIN J. O'CONNOR

DATED: May 1, 2015

APPENDIX VOLUME I OF V

**LUM, DRASCO & POSITAN LLC**
103 Eisenhower Pkwy
Roseland, New Jersey 07068
Tel: 973-403-9000
Fax: 973-403-9021
Attorneys for Defendant, Kirby Westheimer

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BANK OF AMERICA, N.A., <br><br>            Plaintiff, <br><br> -vs- <br><br> KIRBY WESTHEIMER, <br><br>            Defendant. | Civil Action No. 12-cv-7080-JAP <br><br><br> **NOTICE OF APPEAL** |

   **PLEASE TAKE NOTICE** that Defendant, Kirby Westheimer, hereby appeals to the

United States Court of Appeals for the Third Circuit from the Order (Dkt. # 47) and Opinion

(Dkt. # 48) of the Hon. Joel A. Pisano, U.S.D.J. entered in this action on February 28, 2014 and

the Order and Judgment granting motion for final judgment of foreclosure entered in this action

on November 18, 2014 (Dkt. # 54).

                                        **LUM, DRASCO & POSITAN LLC**
                                        Attorneys for Defendant, Kirby
                                        Westheimer

                                        /s *Paul A. Sandars, III*
                                        PAUL A. SANDARS, III

                                        /s *Kevin J. O'Connor*
                                        KEVIN J. O'CONNOR

Dated: December 16, 2014

                                        1

                                        A-1

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on December 16, 2014, the undersigned electronically filed the forgoing Notice of Appeal with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on the CM/ECF system.

*/s Kevin J. O'Connor*
KEVIN J. O'CONNOR, ESQ.

NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

BANK OF AMERICA, N.A.,

      Plaintiff,

    v.

KIRBY WESTHEIMER *et al.*,

      Defendants.

             :
             :     Civil Action No. 12-7080 (JAP)
             :
             :     **ORDER**
             :

---

Presently before the Court is Plaintiff's motion to dismiss Defendant's Counterclaim and Plaintiff's motion for summary judgment on its mortgage foreclosure action [docket # 17]. For the reasons set forth in the accompanying Opinion,

**IT IS** on this 28th day of February, 2014,

**ORDERED** that Plaintiff's Motion to Dismiss Defendant's Counterclaim is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Motion for Summary Judgment on the Complaint is **GRANTED**.

/s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge

A-3

NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | : | |
| Plaintiff, | : | Civil Action No. 12-7080 (JAP) |
| v. | : | **OPINION** |
| KIRBY WESTHEIMER *et al.*, | : | |
| Defendants. | : | |

PISANO, District Judge

The instant foreclosure action is brought by Bank of America, N.A. ("BA"), successor in interest to Merrill Lynch Credit Corporation, by and through its servicer and attorney-in-fact, PHH Mortgage Corporation (collectively "Plaintiff"), as the holder of a mortgage and note against the borrower, Kirby Westheimer ("Defendant"). Presently before the Court is Plaintiff's motion to dismiss Defendant's Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) and Plaintiff's motion for summary judgment on its mortgage foreclosure action [docket # 17]. For the following reasons, Plaintiff's motions are GRANTED.

## I.     BACKGROUND

On September 15, 2008, Plaintiff and Defendant entered into a construction loan agreement (the "Loan"), and Defendant executed and delivered an Adjustable Rate Note (the "Note") in the principal amount of $1,500,000.00. Under the Loan Agreement, Defendant was to use the Loan proceeds to finance the construction of certain improvements (the "Project") to his residence located at 210 Mercer Street, Princeton, New Jersey (the "Residence" or "Property").

As security for the Note, Defendant executed and delivered to Plaintiff a mortgage (the "Mortgage"), which among other conditions, rights, duties and privileges set forth therein, encumbers the Residence. The Mortgage was duly recorded with the Mercer County Clerk's Office.

Plaintiff alleges that Westheimer defaulted on the Loan by failing to complete the Project in accordance with the Construction Loan Agreement, which provides that construction on the Project was to be completed no later than March 31, 2010. On May 21, 2012, the Project still had not been completed and Plaintiff sent Defendant a letter advising that unless Defendant complied with the terms of the Loan and completed the Project, Plaintiff may exercise its right to foreclose on the Property. Defendant failed to cure his default under the Loan and Plaintiff filed its Complaint in this action on November 15, 2012, alleging a single cause of action for foreclosure on the Property [docket # 1].

On February 13, 2013, Defendant filed his Answer, Affirmative Defenses and Counterclaim [docket # 8]. In sum and substance, Defendant alleges that Plaintiff was under an affirmative duty to ensure that construction of the Project was proceeding within the timeframe, budget, and specifications agreed to in the Loan, and that any default on the Loan resulted from Plaintiff's failure to conduct proper inspections of the Project.

In 2006, Defendant decided to undertake a substantial remodel to his Residence and hired a contractor to manage the Project. According to Defendant, from July 2007 to August 2008, he paid approximately $1,016,585.55 of personal funds towards the construction. In August 2008, it became apparent that he would need additional funds to complete the Project and he sought financing from Plaintiff.

Under the terms of the Loan, before Plaintiff would disburse finds to Defendant, Plaintiff required an inspection of the Project and a signed request for disbursement from Defendant. Defendant claims he believed the inspections were conducted to ensure that the Project was proceeding in a timely fashion, "on budget" and in compliance with the plans and specifications for the Project. According to Defendant, the inspection procedure was a "material element" in his decision to execute the Loan and he was under the impression that "[Plaintiff] and it Agents were expected to and would take appropriate affirmative action, including intervening when needed in order to assure the timely and 'on budget' completion of the Project." Counterclaim ¶ 50, 54. Defendant acknowledges that pursuant to the Loan Agreement, Plaintiff "is under no obligation to supervise construction of the Improvement," but argues that it was "clear, understood and apparent to [him] that [Plaintiff's] role in the Project transcended merely lending and disbursing the Loan proceeds to him." *Id.* at ¶ 27.

Defendant's Counterclaim is based largely on the assertion that Plaintiff's inspections of the property were inadequate. According to Defendant, Plaintiff sent several different individuals to conduct inspections of the Project. As a result of the "lack of continuity" in the inspections, Defendant claims that Plaintiff "turned a 'blind eye' toward the disruptions and delays" in construction of the Project.  According to Defendant, if Plaintiff had performed proper inspections of the Project, Plaintiff would have realized the Project was not proceeding within the anticipated timeframe or budget, and that Plaintiff, upon such realization, should have refused to disburse additional Loan proceeds until the deficiencies were remedied.

According to Defendant, around September 2011, Plaintiff informed him for the first time that he would have to personally contribute additional funds to the Project before any further proceeds would be disbursed. Defendant claims that although he complied with all of his

obligations under the Loan and never failed to make a payment, Plaintiff refused to disburse the remaining Loan balance of approximately $266,000.00. Defendant alleges that as a result of Plaintiff's failure to fulfill its purported obligations under the Loan, "the Project lies dormant" and the Residence is in "shambles."

Based on the alleged conduct of Plaintiff, Defendant's Counterclaim asserts thirteen causes of action for: (1) Plaintiff's breach of the Loan documents by failing to properly conduct inspections of the property or release the results of the inspections; (2) Plaintiff's breach of the implied covenant of good faith and fair dealing; (3) Plaintiff's negligence in administering the Loan and managing the Project; (4) reformation of the Loan Agreement based on the parties' material mistake of fact; (5) conversion and misappropriation by Plaintiff in withholding and failing to disburse the balance of the loan proceeds to Defendant; (6) waste, impairment and diminished value of the Residence; (7) unjust enrichment; (8) malicious and tortious interference with Defendant's prospective economic advantage; (9) Plaintiff's negligent misrepresentation of material facts in connection with the Loan Documents; (10) specific performance requiring the immediate disbursal of the remaining balance of the Loan; (11) imposition of a constructive trust, equitable recoupment, disgorgement and an accounting; (12) Plaintiff's liability under *respondeat superior* for its agents responsible for performing the inspections; and (13) declaratory relief.

## II.    DISCUSSION

Plaintiff now moves to dismiss Defendant's Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for summary judgment on its mortgage foreclosure action. Defendant opposes these motions [docket # 42].

**A. Motion to Dismiss Defendant's Counterclaim Under Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). The factual allegations in the complaint must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In deciding a motion to dismiss under Rule 12(6)(6), the court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of the plaintiff's claim. *Lum. v. Bank of Am.,* 361 F.3d 217, 222 n.3 (3d Cir. 2004).

**1. Breach of Contract (Count I)**

In Count I, Westheimer claims that BA materially breached the Loan Documents by (1) failing to conduct and perform the inspections in a proper and appropriate manner, (2) concealing the results of the inspection reports, (3) failing to properly analyze the Draw Affidavits before disbursing the loan proceeds, (4) withholding the balance of the loan proceeds, (5) failing to perform Westheimer that there was a Construction Cost Deficiency, and (6) requiring Westheimer to invest over $1,000,000 as a precondition to the Loan. Westheimer further alleges that BA, in order to "protect itself from a downturn in the economy . . . arrange[d] for the creation on a non-material and 'technical' default under the Loan Documents." Counterclaim ¶ 72-73.

To state a claim for breach of contract under New Jersey law, a plaintiff must allege: (1) the existence of a valid contract between itself and the defendant; (2) that the defendant materially breached the contract; and (3) the plaintiff suffered damages as a result of the breach. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 421 F. Supp. 2d 831, 833 (D.N.J. 2006) (citing *Coyle v. Englander's*, 488 A.2d 1083 (N.J. Super. Ct. App. Div. 1985)).

There is no dispute between the parties regarding the validity of the Loan Documents, satisfying the first element for a breach of contract claim. However, the Court finds that Westheimer has failed to allege any breach of the Loan Documents by BA. Westheimer's Counterclaim is based largely on BA's purported "affirmative obligation . . . to conduct through its Agents regular, on-site Project related inspections of the Residence." Counterclaim ¶ 32. The Loan Agreement states that Plaintiff "or its agents will have the right at all times during the period of construction to enter upon the Property to conduct inspections . . . ." Complaint, Exhibit A at 3. Under the terms of the Loan Agreement, Plaintiff "is under no obligation to supervise the construction of the improvements . . . [and] inspection of the construction of the Improvements is for the sole purpose of protecting and preserving the security of [BA]." *Id.*, Exhibit A at 4.

Furthermore, the Loan Agreement clearly states that "[n]o inspection is to be construed as a representation or endorsement that the construction of the Improvements is in fact in compliance with Plans and Specifications, that the construction will be free of defective material or workmanship, or that the construction is in compliance with limitations or requirements imposed by covenants and restrictions of record or by government authority." *Id.*

The provisions of the Loan Agreement run contrary to Westheimer's assertion that BA undertook an "affirmative obligation" to conduct regular inspections of the property and inform

Westheimer of the results of the inspections. The Loan Agreement clearly states that any inspection of the Project by Plaintiff was for BA's benefit and in no way constituted a representation or guarantee regarding the quality of the construction. Furthermore, there is no statement in the Loan Documents providing that Westheimer is entitled to the results of any inspection conducted by BA. Contrary to Defendant's argument, under the terms of the Loan Agreement, it was Defendant's duty to ensure that the construction was completed in a "first class and workmanlike manner" and in "full and strict compliance with the Plans and Specifications." *Id.*

With regard to Westheimer's claim that BA was obligated to withhold disbursement of the Loan proceeds based on the deficiencies in the construction, the Loan Agreements provides that BA "has the right to disapprove defective work and materials and may in its discretion, but is not obligated to, withhold disbursements until any defects are corrected . . . ." *Id.* Based on the terms of the Loan Documents, the Court finds that BA was under no obligation to conduct inspections, provide the results of any inspections to Westheimer, or to withhold Loan proceeds when deficiencies arose. Therefore, because Westheimer has failed to allege any action taken by BA which would constitute a breach of the Loan Documents, the Court finds that Westheimer has failed to state a claim for breach of contract. Accordingly, Count I of the Counterclaim is dismissed.

### 2. Breach of the Covenant of Good Faith and Fair Dealing (Count II)

Count II asserts a violation of the covenant of good faith and fair dealing. "The implied duty of good faith and fair dealing does not operate to alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement." *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 271-72 (3d Cir. 2004) (internal

quotations and citations omitted). "[W]here the terms of the parties' contract are clear, the implied covenant of good faith and fair dealing will not override the contract's express language." *Id.* Defendant does not allege any lack of clarity in the Loan Agreement. Instead, Defendant asserts that Plaintiff was obligated to perform additional duties in direct conflict with the terms of the Loan. Therefore, because the parties' contract is clear, the Court finds that Defendant has failed to state a claim for Plaintiff's breach of the implied covenant of good faith and fair dealing. Accordingly, Count II is dismissed.

### 3. Negligence (Count III)

In Count III, Defendant alleges that Plaintiff "was under a duty of care to [Defendant] to act reasonably in connection with the Loan" and Plaintiff "knowingly, recklessly, intentionally and/or willingly breached its duties owing to [Defendant]." Counterclaim ¶ 80-81. Defendant further claims that as a direct and proximate result of Plaintiff's purported negligence, he "has been caused to suffer and in the future will continue to suffer financial loss, damage and irreparable harm." *Id.* at ¶ 82.

A claim for negligence must demonstrate a duty, a breach of that duty, and foreseeable resulting injury proximately caused by the breach. *Anderson v. Sammy Redd and Assoc.*, 650 A.2d 376 (N.J. Super. Ct. App. Div. 1995). Here, the Court finds that Defendant has failed to state a claim for negligence because he has not established that Plaintiff owed him a duty of care. Under New Jersey law, the "mere existence of a mortgage agreement between plaintiff and defendant is insufficient, as a matter of law to create any duty of care owing from Defendant to Plaintiff." *Int'l Minerals & Mining Corp. v. Citicorp North Am., Inc.*, 736 F. Supp. 587, 597 (D.N.J. 1990) (citing *Washington Steel Corp. v. TW Corp.*, 602 F.2d 594, 599-600 (3d Cir. 1979) (overruled on other grounds by *Clark v. K-Mart Corp.*, 979 F.2d 965, 967-69 (3d Cir. 1992)).

There is "a general presumption that the relationship between lenders and borrowers is conducted at arms-length, and the parties are each acting in their own interest." *United Jersey Bank of Kensey,* 704 A.2d 38, 45 (N.J. Super. Ct. App. Div. 1997).

Westheimer contends that that BA's "utterly negligent and deficient" inspections and "reckless" conduct in allowing "loan proceeds to be disbursed for work that was incomplete or defective" created a duty of care. Opposition at 5. Although there is a general presumption that the relationship between a lender and a borrower is conducted at arms length, under New Jersey law, a duty may arise from transactions: (1) "involving fiduciary relationships such as a principal and agent or attorney and client," (2) "situations in which either one or each of the parties, in entering . . . [the] transaction, expressly reposes . . . a trust and confidence in the other . . . or [because of the] circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence . . . is necessarily implied" and (3) "contracts or transactions which in their essential nature, are intrinsically fiduciary and necessarily call[ ] for perfect good faith and full disclosure, without regard to any particular intention of the parties." *Id.* at 44 (citations omitted).

Here, Westheimer claims BA owes a duty arising out of the second exception. Under the second exception, in which one of the parties "expressly reposes a trust or confidence in the other" a duty arises "where the lender encouraged the borrower to repose special trust or confidence in its advice, thereby inducing the borrower's reliance." *Id.* at 45. However, this exception only creates a duty between a lender and a borrower in cases involving "egregious breaches of the lender's duty of good faith and fair dealing . . . [where] the bank actively encouraged the [borrower] to rely upon its advice and concealed its self-interest in promoting the transaction." *Id.* at 46. Westheimer alleges that BA's alleged conduct in "improperly

conduct[ing] inspections that were required prior to issuance of draws against the construction loan" constitutes "special circumstances" warranting a finding by the Court that BA breached a duty of care owed to Westheimer.

As previously noted by the Court, any inspections conducted by BA were for BA's benefit only, and under the clear terms of the Loan Agreement, BA was under no obligation to monitor the progress or quality of the construction, release the findings of any inspections to Westheimer, or to withhold Loan proceeds upon any finding of deficiency. All of the conduct alleged by Westheimer is well within BA's rights and obligations under the Loan Documents and falls far short of demonstrating any "egregious" action taken by BA. Therefore, because BA did not owe a duty of care to Westheimer, the Court finds that Westheimer has failed to state a claim for negligence. Accordingly, Count III is dismissed.

### 4. Reformation (Count IV)

In Count IV, Defendant alleges "a material mutual mistake of fact in that the Construction Costs were grossly underestimated and fell substantially short of the actual amount of monies needed to complete the project" and requests a reformation of the Loan "to reflect the mistaken underfunding of the Project." Counterclaim ¶ 84-86. "Reformation of a contract is an equitable remedy, traditionally available when there exists either mutual mistake or unilateral mistake by one party and fraud or unconscionable conduct by the other." 2011 WL 6341182, at *8 (N.J. Super. Ct. App. Div. Dec. 20, 2011) (citations omitted). Mutual mistake exists only when "both parties were laboring under the same misapprehension as to a particular essential fact." *Bonnco Petrol, Inc. v. Epstein*, 560 A.2d 655, 659 (N.J. 1989). "New Jersey law also requires for reformation for mutual mistake that the minds of the parties have met and reached a prior existing agreement, which the written document fails to express." *Id.*

Here, the Court finds that Defendant has failed to allege facts demonstrating a mutual mistake requiring reformation of the Loan. The cost of the construction provided for in the Loan Agreement is "estimated" and Article 2.2 of the Loan Agreement provides the appropriate remedy in the event that the lender "at any time during the term of the Loan . . . determines that the actual cost to complete construction of the Improvements may or will exceed the sum of the Loan Proceeds." Complaint, Exhibit A at 1-2. The Loan Agreement clearly contemplates the possibility of a difference between the estimated and actual cost of construction and states that Defendant bears the responsibility for any additional costs in excess of those estimated in the Loan. Even if Defendant believed, in clear contradiction with the terms of the Loan Agreement, that Plaintiff guaranteed the final cost of the Project, there is no indication that any such mistake was mutual to both parties. Therefore, the Court finds that Plaintiff has failed to demonstrate that the parties "met and reached a prior existing agreement, which the [Loan Agreement] fails to express." *Bonnco*, 560 A.2d 655 at 659. Accordingly, Count IV is dismissed.

### 5. Conversion and Misappropriation (Count V).

In Count V, Defendant alleges that Plaintiff's failure to disburse the balance of the Loan Proceeds "constitutes unlawful conversion and misappropriation of monies to which he is entitled." Counterclaim ¶ 89. "[C]onversion consists of the wrongful exercise of dominion and control over property by another in a manner inconsistent with the owner's rights." *Commercial Ins. Co. of Newark v. Apgar*, 267 A.2d 559, 561-62 (N.J. Super. Ct. Law Div. 1970).

Here, Defendant's claim for conversion fails because Defendant has not demonstrated an ownership interest in the undisbursed Loan Proceeds. Under the terms of the Loan Agreement, several conditions must be met before the disbursement of Loan Proceeds to Defendant. Even assuming, *arguendo*, that Defendant met the requirements for regular disbursement of the Loan

Proceeds throughout the construction, Defendant has failed to allege satisfaction of the requirements for the "final disbursement of funds" under the Loan Agreement. *See* Complaint, Exhibit A at 3. Therefore, because Defendant has failed to demonstrate any entitlement to the remaining Loan Proceeds, his claim for conversion fails. Accordingly, Count V is dismissed.

### 6. Waste, Impairment and Diminished Value (Count VI)

In Count VI, Defendant claims that Plaintiff's administration of the Loan "has irreparably damaged the fair market value of the Residence, and has deprived [Defendant] of all his right, title and interest therein, as the Residence has been rendered and to date remains uninhabitable and in a state of great disrepair." Counterclaim ¶ 92.

As previously noted, under the clear terms of the Loan Agreement, Defendant accepted "full responsibility for selection of the Contractor and any subcontractors and all materials, supplies and equipment to be used in the construction" and Plaintiff was "under no obligation to supervise construction of the improvements." Complaint, Exhibit A at 4-5. Therefore, because it was Defendant's obligation to ensure that the construction would be completed "[i]n a first class and workmanlike manner" and "[i]n full and strict compliance with the Plans and Specifications," the Court finds that the responsibility for any deficiencies in the construction falls solely on Defendant. *Id.,* Exhibit A at 4. Accordingly, Count VI is dismissed.

### 7. Unjust Enrichment (Count VII)

In Count VII, Defendant alleges that Plaintiff was unjustly enriched by "the receipt of monies from [Defendant] on account of Inspection fees, interest, charges, costs incidental to the Loan and other good and valuable consideration paid by [Plaintiff]." Counterclaim ¶ 95.

To state a claim for unjust enrichment under New Jersey law, a plaintiff must allege "(1) that defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by

the defendant is inequitable." *Wanaque Borough Sewerage Auth. v. Twp. of West Milford*, 677

A.2d 747 (N.J. 1996) (citation omitted). Unjust enrichment is a form of quasi-contractual

liability that exists when the defendant has received a benefit from plaintiff that it would be

inequitable for him to retain. *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009).

However, such liability is precluded where the subject matter of the claim is governed by an

express contract, in which case the plaintiff is limited to contractual remedies. *Suburban

Transfer Serv. v. Beech Holdings, Inc.*, 716 F.2d 220, 226-27 (3d Cir. 1983).

Here, the subject matter of Defendant's claim is governed by the Loan Documents, which

precludes Defendant's allegation that Plaintiff was unjustly enriched. Furthermore, all of the

benefits allegedly received by Plaintiff fall within the terms of the Parties' express and valid

written agreement and Defendant has failed to plead facts demonstrating that any benefit

received by Plaintiff is inequitable. Therefore, the Court finds that Defendant has failed to state a

claim for unjust enrichment. Accordingly, Count VII is dismissed.

### 8. Tortious Interference with Prospective Economic Benefit (Count VIII)

In Count VIII, Defendant claims that Plaintiff tortuously interfered with his reasonable

expectations regarding "the timely an 'on budget' completion of the Project." Counterclaim ¶ 98.

To establish a claim for tortious interference with prospective economic advantage, a plaintiff

must show: (1) a reasonable expectation of economic advantage to plaintiff; (2) interference

done intentionally and with "malice"; (3) a causal connection between the interference and the

loss of prospective gain; and (4) actual damages. *Printing Mart-Morristown v. Sharp Elecs.

Corp.*, 563 A.2d 31 (N.J. 1989).

Here, Defendant has failed to allege any facts supporting the assertion that Plaintiff

maliciously interfered with Defendant's reasonable expectations under the Loan Documents.

Accordingly, the Court finds that Defendant has failed to state a claim for tortious interference

with his prospective economic benefit and Count VII is dismissed.

### 9. Negligent Misrepresentation of Material Facts (Count IX)

In Count IX, Westheimer claims that in connection with the negotiation and the execution

of the Loan Documents, BA made materially false and misleading statements regarding BA's

obligations under the Loan, and that without the alleged false statements Westheimer would not

have agreed to enter into the Loan.

To prevail on a claim for negligent misrepresentation, a plaintiff must prove: (1)

defendant negligently made a false communication of material fact; (2) that plaintiff justifiably

relied upon the misrepresentation; and (3) the reliance resulted in an ascertainable loss or injury.

*See H. Rosenblum, Inc. v. Adler,* 461 A.2d 138 (N.J. 1983); *Gross v. Johnson & Johnson—Merck*

*Consumer Pharm. Co.,* 696 A.2d 793 (N.J. Super. Ct. App. Div. 1997).

Here, the Court finds that Westheimer has failed to allege facts sufficient to establish that

BA made any false statement regarding a fact material to the Loan. Although Westheimer claims

that false and misleading statements were made to him by BA, he does not include the content or

the context of any alleged statement. Therefore, because Westheimer has failed to show any

allegedly false statement of material fact made to him by BA, the Court cannot determine

whether any such statement was reasonably relied upon by Defendant and resulted in

ascertainable damage to Westheimer. Accordingly, the Court finds that Defendant has failed to

state a claim for negligent misrepresentation of a material fact and Count IX is dismissed.

**10. Specific Performance (Count X)**

In Count X, Defendant asks the Court to order specific performance of the Loan

Documents and require BA "to immediately disburse the remaining balance of the Loan

Proceeds in accordance with the Loan Documents." Counterclaim ¶ 109. Specific performance is

an equitable remedy and not an independent cause of action and "may not stand as a claim,

independent from a breach of contract claim." *Coter v. Newark Housing Auth.*, 2010 WL

1049930, at *4 (D.N.J. Mar. 17, 2010). As previously noted by the Court, Westheimer has failed

to state a claim for breach of the Loan Documents by BA. Therefore, because Westheimer has

failed to state a claim for breach of contract, his claim for specific performance of the Loan

Documents also fails. Accordingly, Count X is dismissed.

**11. Constructive Trust, Disgorgement and an Accounting (Count XI)**

In Count XI, Westheimer claims that it "would be unjust and inequitable to permit [BA]

to . . . benefit in any way from the unlawful use, misappropriation and conversion of the monies

[Westheimer] has paid under the Loan Documents" and requests that BA be ordered to "forfeit

and return" all consideration received from Westheimer. Counterclaim ¶ 113-14.

"A constructive trust is a measure through which a court of equity can prevent unjust

enrichment and compel a restoration of property to a plaintiff that in good conscience does not

belong to the defendant." *Dime Sav. Bank of New York v. Rietheimer*, 2009 WL 17871, at *7

(N.J. Super. Ct. App. Div. Jan 2, 2009) (citation omitted). Under New Jersey law, the imposition

of a constructive trust requires proof of (1) a wrongful act, which (2) resulted in an unjust

enrichment. *Id.*

Here, Westheimer has failed to demonstrate any wrongful act taken by BA in its

execution or administration of the loan, and as previously noted by the Court, Westheimer has

also failed to show any the existence of any unjust enrichment. Therefore, the Court finds that

Westheimer has failed to state a claim requiring the Court to impose a constructive trust.

Accordingly, Count XI is dismissed.

### 12. *Respondeat Superior* (Count XII)

In Count XII, Westheimer asserts that BA is liable for the actions of its agents under the

doctrine of *respondeat superior*. "[T]he doctrine of *respondeat superior* does not provide an

independent cause of action under New Jersey law." *Rowan v. City of Bayonne,* 474 Fed. Appx.

875, 879 n.3 (3d Cir. 2012) (citing *Carter v. Reynolds,* 815 A.2d 460 (N.J. 2003)). Therefore,

because *respondeat superior* is a theory of liability and not an independent cause of action,

Count XII is dismissed.

### 13. Declaratory Relief (Count XIII)

In Count XIII, Westheimer requests that the Court issue a declaratory judgment finding

BA jointly and severally liable on the preceding counterclaims. Under the Declaratory Judgment

Act, a Court "may declare the rights and other legal relations of any interested party seeking such

declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act

"contemplates that district courts will exercise discretion in determining whether to entertain

such actions." *State Auto Ins. Companies v. Summy,* 234 F.3d 131, 133 (3d Cir. 2000).  Although

the Court's jurisdiction over this matter is undisputed, the Court notes that "district courts

possess discretion in determining whether and when to entertain an action under the Declaratory

Judgment Act, even when the suit otherwise satisfies the subject matter jurisdiction

prerequisites." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 289 (1995).

Based on the Court's finding that Westheimer's Counterclaim fails to state any claim

against BA upon which relief could be granted, the Court finds that the issuance of a declaratory

judgment on the dismissed claims would not benefit the parties. Therefore, the Court, in its

discretion, declines to issue a declaratory judgment at this juncture. Accordingly, Count XIII is

dismissed.

## B. Motion for Summary Judgment

Summary judgment is governed by Federal Rule of Civil Procedure 56, and is appropriate

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S.

317, 322 (1986). Under Rule 56, a fact is material if it might affect the outcome of the case. *See*

*Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). A material fact raises a "genuine" issue "if

the evidence is such that a reasonable jury could return a verdict" for the nonmoving party.

*Healy v. N.Y. Life Ins. Co.,* 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

The moving party bears the initial burden of proving that no genuine issue of material

fact is in dispute. *Celotex,* 477 U.S. at 323. Whether or not a fact is material is determined

according to the substantive law at issue. *Anderson,* 477 U.S. at 248. Once the moving party has

carried this burden, the non-moving party must present evidence that a genuine fact issue

compels a trial. *Id.* at 324. The non-moving party must then offer admissible evidence that

establishes a genuine issue of material fact, *id.,* not just "some metaphysical doubt as to the

material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Its

opposition must rest on "facts in the record and cannot rest solely on assertions made in the

pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt,* 455 F.3d

195, 201 (3d Cir. 2006).

In establishing whether there is a disputed material fact, "[t]he nonmoving party's

evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor."

*Hunt v. Cromartie,* 526 U.S. 541, 552 (1999) (quoting *Anderson,* 447 U.S. at 255). The Court

shall not "weigh the evidence and determine the truth of the matter," but need only determine

whether a genuine issue necessitates a trial. *Anderson,* 477 U.S. at 249. If the non-moving party

fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material

fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North*

*America,* 974 F.2d 1358, 1363 (3d Cir. 1992).

In New Jersey, in order to foreclose on a mortgage, a lender must establish that: (1) the

mortgage and the loan documents are valid; (2) the mortgage loan is in default; and (3) it has a

contractual right to foreclose in light of the default. *Pardo,* 622 A.2d at 1356. "The only material

issues in a foreclosure proceeding are the validity of the mortgage, the amount of the

indebtedness, and the right of the mortgagee to resort to the mortgaged premises." *Id.*

Under the first element, Plaintiff has established and Defendant does not dispute that

Plaintiff executed and recorded both the Note and Mortgage. Turning to the second element,

Defendant does not dispute that he defaulted on the Loan Documents, but argues that "any

default was caused, created and worsened by Plaintiff's utter and complete failure to conduct

reasonable inspections of the property." Defendant's Response to Plaintiff's Statement of

Material Facts Not in Dispute ¶ 9.

The Loan Agreement contains a list of situations constituting default by Defendant, one

of which states that Defendant will be in default if he "fails to perform any obligation strictly

according to the terms" of the Loan Agreement. Complaint, Exhibit A at 8. The Loan Agreement

defines the Construction Period as ending on March 31, 2010, and provides that "[c]onstruction

of the Improvements will be completed no later than the end of the Construction Period, unless

Borrower has requested an extension of the Construction Period . . . and Lender has approved

such extension request." *Id.,* Exhibit A at 2. It is undisputed that construction was not completed

by March 31, 2010, and Defendant did not receive an extension of the Construction Period.

Therefore, because the construction was not completed by the deadline stated in the Loan

Agreement, Defendant failed to perform his obligations under the terms of the Loan and is now

in default.

While Defendant asserts that Plaintiff is at fault for any default on the Loan, the Court

finds that under the terms of the Loan Document, Plaintiff was under no obligation to conduct

inspections of the property. Furthermore, as previously discussed at length, any inspections

performed by Plaintiff were solely for Plaintiff's benefit and Plaintiff made no guarantee or

representation as to the quality or progress of the construction. Accordingly, the Court finds that

Defendant's claim that the default was caused by Plaintiff is without merit. Therefore, because

Defendant failed to satisfy his obligations under the Loan, the Court finds that Defendant is in

default. Finally, the parties do not dispute that in the event of default, Plaintiff has a contractual

right under the Loan Documents to foreclose on the Residence.

Therefore, because the undisputed facts establish: (1) that the mortgage and loan

documents are valid, (2) that mortgage loan is in default, and (3) that BA has a contractual right

to foreclose in the event of default, the Court finds that Defendant has failed to demonstrate any

genuine issue of material fact and Plaintiff is entitled to judgment as a matter of law.

Accordingly, the Court grants Plaintiff's motion for summary judgment.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss Defendant's Counterclaim and

Plaintiff's motion for summary judgment on the Complaint [docket # 17] are GRANTED. An

appropriate Order accompanies this Opinion.


Date:  February 28, 2014                                   /s/ Joel A. Pisano
                                                          JOEL A. PISANO
                                                          United States District Judge



RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
(973) 538-0800
Attorneys for Plaintiff

**RECEIVED**

**NOV 1 8 2014**

· ⌐ 8:30_____M
WILLIAM T. WALSH CLERK

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BANK OF AMERICA, N.A., successor in interest to MERRILL LYNCH CREDIT CORPORATION, by and through its servicer and attorney-in-fact, PHH MORTGAGE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>KIRBY WESTHEIMER and JOHN DOE #1 through JOHN DOE #40, inclusive,<br><br>Defendants. | Civil Action No. 12-7080-JAP-LHG<br><br><br><br><br><br>**FINAL JUDGMENT<br>OF FORECLOSURE** |

THIS MATTER having been opened to the Court by Bank of America N.A. successor in

interest to Merrill Lynch Credit Corporation, by and through its servicer and attorney-in-fact,

PHH Mortgage Corporation (collectively, "Plaintiff"), for a Final Judgment of Foreclosure

against Kirby Westheimer, and the promissory note and mortgage and other relevant documents

that are the subject of this action having been presented and marked as exhibits by the Court; and

proof having been submitted of the amount due on Plaintiff's mortgage; and sufficient cause

appearing;

Case: 14-4765    Document: 003111950665    Page: 60    Date Filed: 05/01/2015
Case 3:12-cv-07080-JAP-LHG    Document 54    Filed 11/18/14    Page 2 of 3 PageID: 649
Case 3:12-cv-07080-JAP-LHG    Document 53    Filed 06/27/14    Page 4 of 9 PageID: 635



IT is on this _____18th_____ day of ___Nov√___, 2014,

ORDERED AND ADJUDGED that Plaintiff is entitled to have the sum of $1,260,446.72, consisting of $1,252,946.72 being the amount owed to the Bank on the Note, dated September 15, 2008, as of May 15, 2014, and lawful interest thereafter, together with costs of this action to be taxed including counsel fees in the amount of $7,500.00 raised and paid out of the mortgaged premises referred to in the application for final judgment as the Mortgaged Premises; and

IT IS FURTHER ORDERED AND ADJUDGED that the Mortgaged Premises be sold to raise and satisfy the moneys due Plaintiff and that an execution issue for that purpose to the United States Marshals Service, commanding it to hold a sale in accordance with applicable New Jersey Law, including the New Jersey Fair Foreclosure Act, of said Mortgaged Premises and out of the moneys arising from sale that it pay the Plaintiff's debt as set forth in the aforementioned paragraph, with lawful interest thereon and costs as aforesaid, to Plaintiff or its attorney, and that in case there is a surplus remaining after said sale that such surplus be brought into court to abide the further order of the court and that the United States Marshals Service make its report of the said sale detailing the result of the sale, and disbursements made from the proceeds of the sale, if any; and

IT IS FURTHER ORDERED AND ADJUDGED that all of the defendants to this action claiming an interest in the Mortgaged Premises and each of them stand absolutely debarred and foreclosed of and from all equity of redemption of, in and to said mortgaged premises referred to as the Mortgaged Premises shall be sold as aforesaid by virtue of this judgment; and

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff and any purchaser(s) under the foreclosure sale duly recover against the defendants and all parties holding by, through

or claiming under them, possession of the premises mentioned and described in the complaint as

the Properties, with the appurtenances and that a writ of possession issue thereon.

_____

Hon. Joel A. Pisano, U.S.D.J.

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
(973) 538-0800
Attorneys for Plaintiff

RECEIVED

JAN 2 8 2015

AT 8:30_____M
WILLIAM T WALSH CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BANK OF AMERICA, N.A., successor in interest to MERRILL LYNCH CREDIT CORPORATION, by and through its servicer and attorney-in-fact, PHH MORTGAGE CORPORATION, | Civil Action No. 12-7080-JAP-LHG |
| Plaintiff, | |
| v. | |
| KIRBY WESTHEIMER and JOHN DOE #1 through JOHN DOE #40, inclusive, | ORDER ON DEFENDANT'S MOTION FOR STAY AND WAIVER OF BOND REQUIREMENT |
| Defendants. | |

**THIS MATTER** coming before the Court upon the motion of Lum, Drasco & Positan, LLC, attorneys for defendant Kirby Westheimer ("Defendant"), for an Order staying the foreclosure in this action pending appeal and to waive Defendant's obligation to post a supersedeas bond, and a response to the motion having been submitted by Riker, Danzig, Scherer, Hyland & Perretti, LLP, attorneys for plaintiff, Bank of America, N.A., successor in interest to Merrill Lynch Credit Corporation, by and through its servicer and attorney-in-fact, PHH Mortgage Corporation ("Plaintiff"), whereby Plaintiff consented to Defendant's requested relief on the conditions that: (i) Defendant continue monthly interest payments to Plaintiff in lieu of posting a bond; and (ii) if Defendant defaults the required payments, then Defendant be required to post a bond immediately; and for good cause shown;

**IT IS** on this _28_ day of ___Jan___, 2015:

**ORDERED** that Defendant's motion be and hereby is **GRANTED**; and it is further

**ORDERED** that the foreclosure and any and all other proceedings herein are **STAYED**

pending the resolution of Defendant's appeal; and it is further

**ORDERED** that, in lieu of posting a supersedeas bond, Defendant shall continue

monthly payments to Plaintiff of interest on the subject Note at the rate provided therein, as will

be contained in the Interest Billing Statements provided by Plaintiff to Defendant; and it is

further

**ORDERED** that, if Defendant fails to make any such monthly payment and such default

remains uncured for five (5) days then, within five (5) days after demand by Plaintiff, Defendant

shall post a supersedeas bond in an amount sufficient to secure any damages potentially

sustained by Plaintiff during the pendency of the appeal for the use and detention of the subject

property, appellate costs and interest; and it is further

**ORDERED** that Defendant's counsel shall serve a copy of this Order upon all interested

parties within _16_ days of the date hereof.


_____
HON. JOEL A. PISANO, U.S.D.J.

2

A-28