CASE NO. 14-4765

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

BANK OF AMERICA, N.A., successor in interest to MERRILL LYNCH
CREDIT CORPORATION, by and through its servicer and attorney-in-fact, PHH
MORTGAGE CORPORATION,

      Plaintiff-Appellee,

v.

KIRBY WESTHEIMER,

      Defendant-Appellant

On Appeal From The Final Judgment And Orders Of The United States District
Court For The District Of New Jersey, Case No. 12-cv-7080-JAP

**BRIEF OF PLAINTIFF-APPELLEE BANK OF AMERICA, N.A., successor
in interest to MERRILL LYNCH CREDIT CORPORATION, by and through
its servicer and attorney-in-fact, PHH MORTGAGE CORPORATION**

RIKER, DANZIG, SCHERER, HYLAND
& PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
(973) 538-0800
Attorneys for Plaintiff-Appellee

Of Counsel and On the Brief:
  Jonathan P. Vuotto

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 28(a)(1), counsel for Plaintiff-Appellee states as follows:  Bank of America, N.A. ("BANA") is a wholly-owned subsidiary of Bank of America Corporation.  No publicly-held corporation owns 10% or more of the stock of Bank of America Corporation.  PHH Mortgage Corporation is a wholly-owned subsidiary of PHH Corporation.  No publicly-held corporation owns 10% or more of the stock of PHH Corporation.

# **TABLE OF CONTENTS**

**PAGE**

CORPORATE DISCLOSURE STATEMENT......................    1

TABLE OF AUTHORITIES............................................    3

STATEMENT OF ISSUES...........................................    6

STATEMENT OF THE CASE.......................................    6

    A.   The Construction Loan And Defendant's Default....    6

    B.   The Litigation And Defendant's Counterclaim........    8

SUMMARY OF ARGUMENT.......................................    11

ARGUMENT............................................................    13

POINT I
PLAINTIFF-APPELLEE HAS NO DUTY TO
DEFENDANT-APPELLANT..........................................    13

    A.   Applicable Standard.........................................    13

    B.   Plaintiff Has No Fiduciary Duty To Defendant.......    14

POINT II
DEFENDANT-APPELLANT COULD NOT DEFEAT
PLAINTIFF-APPELLEE'S SUMMARY JUDGMENT MOTION    24

    A.   Applicable Standard.........................................    24

    B.   Summary Judgment Is Appropriate......................    26

CONCLUSION.........................................................    28

COMBINED CERTIFICATIONS.....................................    29

# TABLE OF AUTHORITIES

**PAGES**

## CASES

*Abulkhair v. Citibank & Assocs.*, 434 Fed. Appx. 58 (3d Cir. 2011).... 17, 24

*Alexander v. CIGNA Corp.*, 991 F. Supp. 427 (D.N.J. 1998).............22

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)....................25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).......................................13

*Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822 (3d Cir. 2011)..........13, 24

*Barnett Bank of West Florida v. Hooper*, 498 So.2d 923,
55 USLW 2437 (Fla. 1986)...................................................16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)....................13

*Berman v. Gurwicz*, 189 N.J. Super. 89, 458 A.2d 1311
(Ch. Div. 1981)...................................................  15

*Capital Bank v. MVB, Inc.*, 644 So.2d 515, 19 Fla. L. Weekly D1853
(Fla. Dist. Ct. App. 1994).................................................. 16

*Carter Lincoln-Mercury, Inc. v. EMAR Group, Inc.*, 135 N.J. 182,
638 A.2d 1288 (1994).......................................................14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).........................  25, 27

*City of Millville v. Rock*, 683 F. Supp. 2d 319 (D.N.J. 2010).............17

*DuBey v. Bank of Am.*, No. 13-00983 (JAP), 2013 U.S. Dist. LEXIS
153439 (D.N.J. Oct. 25, 2013)...............................................14

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)......................14

*Everest Nat'l Ins. Co. v. Sutton*, No. 07-722, 2008 U.S. Dist. LEXIS 62081,
2008 WL 3833586 (D.N.J. Aug. 11, 2008)...........................................22

*F.G. v. MacDonell*, 150 N.J. 550, 696 A.2d 697 (1997)............................15

*Filmlife Inc. v. Mal "Z" Ena, Inc.*, 251 N.J. Super. 570,
598 A.2d 1234 (App. Div. 1991)................................................... 22

*Fr. Winkler KG v. Stoller*, 839 F.2d 1002 (3d Cir. 1988)......................... 22

*Genesis Bio-Pharmaceuticals, Inc. v. Chiron Corp.*, 27 Fed. Appx. 94
(3d Cir. 2002)...................................................................... 22

*Giles v. Kearney*, 571 F.3d 318 (3d Cir. 2009).................................. 13, 24

*Globe Motor Car Co. v. First Fidelity Bank, N.A.*, 273 N.J. Super. 388,
641 A.2d 1136 (Law Div. 1993)................................................. 14, 17

*Great Falls Bank v. Pardo*, 263 N.J. Super. 388, 622 A.2d 1353
(Ch. Div. 1993).................................................................26, 28

*Healy v. N. Y. Life Ins. Co.*, 860 F.2d 1209 (3d Cir. 1988)..................... 25

*Hunter v. Sterling Bank*, 750 F. Supp. 2d 530 (E.D. Pa. 2010)................. 17, 24

*Investors Warranty of Am., Inc. v. B.W.E. Dev., L.L.C.*, 2010 U.S. Dist.
LEXIS 62543 (D.N.J. June 23, 2010)............................................ 17

*Kernan v. One Wash. Park Urban Renewal Assocs.*, 154 N.J. 437,
713 A.2d 411 (1998)............................................................... 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)......25

*Neitzke v. Williams*, 490 U.S. 319 (1989)....................................... 13

*Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47 (3d Cir. 1988).....15, 17

*Patetta v. Wells Fargo Bank, NA*, 2009 U.S. Dist. LEXIS 82338,
(D.N.J. Sept. 9, 2009)..........................................................17, 24

*Perkins v. Wash. Mut., FSB*, 655 F. Supp. 2d 463 (D.N.J. 2009)…..............14

*Santiago v. GMAC Mortg. Group, Inc.*, 417 F.3d 384 (3d Cir. 2005)………..13

*Soto v. Quicken Loans, Inc.*, 2010 U.S. Dist. LEXIS 131913
(D.N.J. Dec. 14, 2010)…………………………………………….. 17, 24

*St. Matthew's Baptist Church v. Wachovia Bank Nat'l Ass'n*,
2005 U.S. Dist. LEXIS 46607 (D.N.J. May 18, 2005)……………………..... 17, 24

*Stonebridge Bank v. Nita Props., LLC*, 2011 U.S. Dist. LEXIS 9674
(D.N.J. Jan. 31, 2011)……………………………………………....26

*Twp. of West Deptford v. Fulton Bank N.A.*, 2013 N.J. Super.
Unpub. LEXIS 3022 (App. Div. Dec. 26, 2013)………………………....17, 24

*United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 704 A.2d 38
(App. Div. 1997)………………………………………………. 14, 15
17, 18
21, 23
24

## **RULES**

12(b)(6)………………………………………………………...13, 14

## **OTHER**

Restatement (Second) of Torts § 874 (1979)…………………………… 15

Restatement (Second) of Torts § 551 (1977 & Supp.1997)…………………...18

## STATEMENT OF ISSUES

1.    Whether a lender has a fiduciary duty to a borrower to monitor and advise the borrower on a construction project that is being managed by contractors and architects of the borrower's choosing, where the subject loan documents specifically provide that no such duty or obligations shall exist?

2.    Whether summary judgment should be granted where the moving party is entitled to prevail as a matter of law and where the opposing party has submitted no admissible evidence to support his legally invalid defense?

## STATEMENT OF THE CASE

### A.    The Construction Loan And Defendant's Default

On or about September 15, 2008, BANA and Defendant entered into a Construction Loan Agreement, whereby BANA agreed to make a construction loan to Defendant in the maximum principal amount of $1,500,000.00 (the "Loan") under the terms contained in the Agreement.  (A-39; A-46-54.)   Under the Construction Loan Agreement, Defendant was to use the Loan proceeds to finance the construction of certain improvements (the "Project") to certain real property located at 210 Mercer Street, Princeton, New Jersey 08540 (the "Property"), in accordance with certain plans and specifications. (A-46)  The Project was to be completed by March 31, 2010. (*Id.*)

On or about September 15, 2008, to evidence his indebtedness to BANA, Defendant executed and delivered to BANA an Adjustable Rate Note (the "Note") in the principal amount of $1,500,000.00. (A-40; A-56-62.)

To secure the performance of the Construction Loan Agreement and repayment of the Note, Defendant executed and delivered to BANA a certain mortgage (the "Mortgage") dated September 15, 2008, which, among other conditions, rights, duties and privileges as fully set forth therein, encumbers the Property. (A-40; A-64-85.) The Mortgage was duly recorded with the Mercer County Clerk's Office at Book 10191, Page 0403, Control No. 200810060528, Inst. No. RD 2008 035182. (A-40; A-85.) The Construction Loan Agreement, Note and Mortgage shall be collectively referred to as the "Loan Documents."

Defendant defaulted on the Loan Documents because, among other reasons, he has failed to complete the Project in accordance with the terms of the Construction Loan Agreement. (A-14.)

On May 21, 2012, Plaintiff sent Defendant a letter advising him, among other things, that he failed to comply with the terms of the Loan Documents by failing to complete the Project, that accordingly, pursuant to the New Jersey Fair Foreclosure Act, N.J.S.A. 2A:50-53, et seq., Plaintiff provided him with a Notice of Intention to Foreclose. (A-40; A-87-89.) Plaintiff further advised Defendant that, if Defendant failed to cure his defaults by June 18, 2012, Plaintiff may take

steps to terminate his ownership of the Property by commencing a foreclosure action. (*Id.*) Despite Plaintiff's demands, Defendant has failed to cure all of his defaults under the Loan Documents. (A-41.)

As of November 12, 2012, Defendant owes the total amount of $1,234,024.20 under the Loan Documents, plus all attorneys' fees and costs incurred in connection with collecting the debt, and interest continues to accrue. (A-41.)

## B.    The Litigation And Defendant's Counterclaim

Plaintiff filed its Verified Complaint in this action on November 14, 2012. (A-38.) Defendant filed his Answer, Affirmative Defenses and Counterclaim on February 15, 2013. (A-94.)

Defendant alleges (in his unverified pleading) that his Counterclaim arises out of the purported negligence and otherwise purportedly improper manner and means by which BANA inspected and/or failed to inspect the Project as a precondition of its disbursement of the Loan proceeds to Defendant, including the "Loan's administration." (A-105.) Defendant alleges that BANA's purportedly negligent actions included its alleged failures to properly review and analyze the extensive documentation provided on Defendant's behalf to BANA in connection with the disbursement of the Loan proceeds, and BANA's alleged failure to realize

and inform Defendant that the Project could not be timely finished in accordance with its estimated costs and completion date. (*Id.*)

Defendant further alleges that, as a material inducement for Defendant to agree to the Loan, BANA purportedly made repeated misrepresentations, assurances and promises to Defendant that BANA's agents were charged with the responsibility to administer, oversee, supervise and monitor the Loan, and in particular, assure compliance with and adherence to all Loan provisions and BANA's practices and procedures. (A-106.) Defendant alleges that BANA's loan procedures included a requirement that a Construction Loan Draw Request Affidavit be submitted to BANA for its review, reflecting the amounts of labor and materials expended during the applicable construction time period, and that Project completion was proceeding timely, on schedule, and in line with its anticipated completion date. (*Id.*)

Defendant further alleges that, to induce Defendant to enter into the Loan, and in connection with the disbursement of the Loan proceeds, BANA's procedures included regular periodic site inspections of the Project and the Property. (A-106-107.) Defendant further alleges that BANA's purported representations and loan procedures were intended to "assure" Defendant that the Project was proceeding timely, on schedule, and towards its anticipated completion date in accordance with the estimated cost to complete. (*Id.*)

9

Defendant alleges that, at all relevant times, including Defendant's determination to invest more than $1 million "ot his own funds" into the Property as a precondition for BANA's funding the Loan, Defendant allegedly believed and relied upon BANA's purported representations that its loan procedures would act to safeguard his investment and as a means by which to ensure the timely completion of the Project "at or under its estimated cost." (A-107.)

Defendant alleges that, despite BANA's purported "obligations" to Defendant under the Loan Documents and the alleged representations made to Defendant, BANA negligently failed in the administration of the Loan, including but not limited to, reviewing certain Draw Affidavits and conducting inspections of the Property. (*Id.*) Defendant further alleges that BANA was unaware of the "actual true stage and percentage of completion of the Project." (*Id.*) Defendant alleges that the Project eventually "ground to a complete halt and standstill" with the Property remaining uninhabitable and the Project "being reduced to a 'war zone,'" forcing Defendant "to move his residence to a cottage on the Property." (*Id.*)

Defendant alleges that, had BANA discharged its purported "duties owing" to Defendant, BANA would or should have known "each time a Draw Affidavit was submitted, that the Project was grossly underfunded and its anticipated completion date impossible to meet." (A-108.) Defendant further alleges that a

competent visual inspection of the then ongoing status and condition of the Property would or should have fully informed BANA and made it aware that the Project's percentage of completion was seriously at variance from that reflected in the Draw Affidavits. (*Id.*)

Based on these and related factual allegations, Defendant asserted thirteen separate causes of action against Plaintiff. (A-125-135.)

On June 7, 2013, Plaintiff filed a Motion to Dismiss the Borrower's Counterclaims and for Summary Judgment. (A-137.) On February 24, 2014, the District Court entered an Order granting Plaintiff's Motion to Dismiss the Borrower's Counterclaims and for Summary Judgment. (A-3.)

## SUMMARY OF ARGUMENT

1.    Defendant-Appellant cannot demonstrate sufficient "special circumstances" to warrant the imposition of a fiduciary duty running from Plaintiff-Appellee to Defendant-Appellant. Defendant has not alleged that Plaintiff encouraged Defendant to repose special trust in Plaintiff's inspections of the Property or that Plaintiff induced Defendant's reliance – in fact, Defendant's own allegations and admissions contradict the existence of such circumstances. Further, there are no allegations of "egregious circumstances" or "swindling" of Defendant that would warrant the imposition of a fiduciary duty on Plaintiff. In the absence of such allegations (or any evidence suggesting such circumstances) –

and in the presence of an admittedly valid and binding loan agreement that specifically provides that (i) the parties' relationship is "borrower-lender" and not "partner, agent or joint venturer of or with [Defendant] or any other party associated with the construction of the [Project]"; and (ii) Plaintiff is "under no obligation to supervise construction of the [Project]" – Defendant's Counterclaim is clearly not meritorious.  The Counterclaim was properly dismissed.

2.    Defendant's alleged defense to Plaintiff's summary judgment motion is that Plaintiff caused the default with the purportedly negligent inspections of the Property.  The only evidence Defendant submitted in support of the defense is a voluminous list of deficiencies in the Project prepared by Defendant's expert witness in his separate state-court litigation against his own architects and contractors.

As with his Counterclaim, however, Defendant's defense to Plaintiff's foreclosure claim is invalid as a matter of law, because Plaintiff had no duty to inspect the Property or to monitor Defendant's construction project.  Defendant cannot properly blame Plaintiff for the apparent defective design and execution of the Project by the professionals he chose.  In any event, the Construction Loan Agreement specifically contradicts his alleged defense.  The District Court properly entered summary judgment in Plaintiff's favor.

# ARGUMENT

## POINT I

## PLAINTIFF-APPELLEE HAS NO DUTY TO DEFENDANT-APPELLANT

### A.    Applicable Standard

This Court reviews district court decisions on (i) summary judgment and (ii) dismissal for failure to state a claim under a *de novo* standard. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011) (citing *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (summary judgment) and *Santiago v. GMAC Mortg. Group, Inc.*, 417 F.3d 384, 386 (3d Cir. 2005) (motion to dismiss)).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678; 129 S. Ct. 1937; 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim has facial plausibility when the party "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Rule 12(b)(6) authorizes the Court to dismiss a claim on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 1832, 104 L. Ed. 2d

338 (1989) (noting that Rule 12(b)(6) streamlines the litigation by dispensing with needless discovery and fact finding).

### B. <u>Plaintiff Has No Fiduciary Duty To Defendant</u>

Federal courts sitting in diversity apply the relevant state substantive law of the state in which the Court sits. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

"To recover under a negligence theory, it is paramount that a defendant first owe the plaintiff a duty." *Kernan v. One Wash. Park Urban Renewal Assocs.*, 154 N.J. 437, 445, 713 A.2d 411, 415 (1998); *see DuBey v. Bank of Am.*, No. 13-00983 (JAP), 2013 U.S. Dist. LEXIS 153439, *6 (D.N.J. Oct. 25, 2013). Under New Jersey law, "a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Perkins v. Wash. Mut., FSB*, 655 F. Supp. 2d 463, 471 (D.N.J. 2009); *see DuBey v. Bank of Am.*, 2013 U.S. Dist. LEXIS 153439 at *6.

The question of whether a fiduciary duty exists is a matter of law. *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 551, 704 A.2d 38, 43 (App. Div. 1997) (citing *Carter Lincoln-Mercury, Inc. v. EMAR Group, Inc.*, 135 N.J. 182, 194, 638 A.2d 1288, 1294 (1994), *certif. denied*, 153 N.J. 402 (1998)). "[T]here is no presumed fiduciary relationship between a bank and its customer." *Id.* at 552 (citing *Globe Motor Car Co. v. First Fidelity Bank, N.A.*, 273 N.J. Super. 388, 393,

641 A.2d 1136, 1138-39 (Law Div. 1993), *aff'd*, 291 N.J. Super. 428, 677 A.2d 794 (App. Div.), *certif. denied*, 147 N.J. 263 (1996)).  A fiduciary duty may arise, however, when "either one or each of the parties, in entering . . . [the] transaction, expressly reposes . . . a trust and confidence in the other . . . or [because of the] circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence . . . is necessarily implied." *Id.* at 551 (alterations in original) (quoting *Berman v. Gurwicz*, 189 N.J. Super. 89, 93-94, 458 A.2d 1311, 1313-14 (Ch. Div. 1981), *aff'd*, 189 N.J. Super. 49, 458 A.2d 1289 (App. Div.), *certif. denied*, 94 N.J. 549 (1983)).  Accordingly, a "fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship," or when "one party places trust and confidence in another who is in a dominant or superior position." *F.G. v. MacDonell*, 150 N.J. 550, 563, 696 A.2d 697, 703-04 (1997) (citing Restatement (Second) of Torts § 874 comment a (1979)).

Nevertheless, New Jersey has adopted the reasoning of the Third Circuit Court of Appeals that it "'would be anomalous to require a lender to act as a fiduciary for interests on the opposite side of the negotiating table,' because their respective positions are essentially adversarial." *Kensey*, 306 N.J. Super. at 553 (quoting *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir.

1988) (citation omitted)). Thus, under New Jersey law there is a presumption that the "relationship between lenders and borrowers is conducted at arms-length, and the parties are each acting in their own interest." *Id.* (citation omitted).

Accordingly, a breach of fiduciary duty claim against a lender can only arise where there are "special circumstances." *See id.* at 555. "Fiduciary relationships implied in law are premised upon the specific factual situation surrounding the transaction and the relationship of the parties." *Id.* at 553 (citations omitted). Courts have found a breach of fiduciary duty by banks when there has been "egregious breaches of the lender's duty of good faith and fair dealing[,]" such as where a "bank actively encouraged the plaintiff to rely upon its advice and concealed its self-interest in promoting the transaction involved." *Id.* at 557; *see Barnett Bank of West Florida v. Hooper*, 498 So.2d 923, 55 USLW 2437 (Fla. 1986) (finding the bank breached its fiduciary duty when it encouraged its customer to invest in a company the bank knew was perpetrating fraud); *Capital Bank v. MVB, Inc.*, 644 So.2d 515, 19 Fla. L. Weekly D1853 (Fla. Dist. Ct. App. 1994) (finding the bank breached its fiduciary duty because the bank promised and pressured its customer to enter into transactions with another customer who was on the verge of bankruptcy). In such cases, "the banks acted no better than common swindlers[.]" In less egregious circumstances, however, courts have not imposed a duty on lenders "to disclose information they may have concerning the financial

viability of the transactions the borrowers were about to enter." *Kensey*, 306 N.J. Super. at 557.

Finally, "[a]bsent a contractual duty, a bank has no obligation to manage, supervise, control or monitor the financial activity of its debtor[.]" *Globe*, 273 N.J. Super. at 395. Indeed, "imposing a duty on a bank that would obligate it to be responsible for its depositor's financial affairs would be impractical as a matter of public policy." *Id.* at 394.

In short, under New Jersey law, creditor-debtor relationships <u>rarely</u> give rise to a fiduciary duty. *See Abulkhair v. Citibank & Assocs.*, 434 Fed. Appx. 58, 63 (3d Cir. 2011); *Paradise Hotel*, 842 F.2d at 53; *City of Millville v. Rock*, 683 F. Supp. 2d 319, 331-32 (D.N.J. 2010); *Hunter v. Sterling Bank*, 750 F. Supp. 2d 530, 545-47 (E.D. Pa. 2010); *Soto v. Quicken Loans, Inc.*, 2010 U.S. Dist. LEXIS 131913, *22-23 (D.N.J. Dec. 14, 2010); *Investors Warranty of Am., Inc. v. B.W.E. Dev., L.L.C.*, 2010 U.S. Dist. LEXIS 62543, *8-9 (D.N.J. June 23, 2010); *Patetta v. Wells Fargo Bank, NA*, 2009 U.S. Dist. LEXIS 82338, *30-32 (D.N.J. Sept. 9, 2009); *St. Matthew's Baptist Church v. Wachovia Bank Nat'l Ass'n*, 2005 U.S. Dist. LEXIS 46607, *28-32 (D.N.J. May 18, 2005); *Twp. of West Deptford v. Fulton Bank N.A.*, 2013 N.J. Super. Unpub. LEXIS 3022, *9-12 (App. Div. Dec. 26, 2013); *Kensey*, 306 N.J. Super. at 552-53.

Defendant contends that a duty arose because Defendant "expressly reposed" a trust and confidence in Plaintiff, which is generally considered an exception to the "no duty" rule.   To fit under this exception, however, the circumstances must be "'so shocking to the ethical sense of the community, and [] so extreme and unfair, as to amount to a form of swindling.'"  *Kensey*, 306 N.J. Super. at 554 (quoting Restatement (Second) of Torts § 551 (1977 & Supp.1997), Cmt. 1); *see Rock*, 683 F. Supp. 2d at 332.

The circumstances alleged here do not approach that level.   Defendant merely alleges that Plaintiff negligently conducted inspections of the Property and that Defendant was relying on <u>Plaintiff</u> to ensure that the Project was being timely and properly constructed – an unreasonable and unfounded belief considering that Defendant admittedly retained an architect and <u>construction manager</u> for the Project (A-152).

Although the allegation is not in his pleading, in opposing Plaintiff's motion Defendant contended that Plaintiff's inspections amounted to a "sham" – apparently in an attempt to amplify the severity of Plaintiff's alleged negligence to a level that could satisfy the exception to the "no duty" rule. Defendant does not explain, however, what the purpose would be of such "sham" inspections or how Plaintiff could possibly benefit from it.   Nevertheless, even if Plaintiff's inspections were negligently conducted (which Plaintiff does <u>not</u> concede), it

would not give rise to the "egregious circumstances" sufficient to form a duty running from Plaintiff to Defendant.

Under the Construction Loan Documents, <u>Plaintiff had no obligation to even conduct the inspections</u>. *See* A-48, Construction Loan Agreement, Art. 2.4(a)(4) ("LENDER has conducted such inspections as it <u>may</u> require") (emphasis added); Art. 2.5(a) ("LENDER or its agents <u>will have the right</u> at all times during the period of construction to enter upon the Property to conduct inspections") (emphasis added). Indeed, Defendant's assertion that Plaintiff owed Defendant a duty is clearly contradicted by multiple terms of the Construction Loan Agreement. For example, Article 2.5(d) of the Agreement provides:

> <u>LENDER is under no obligation to supervise construction of the Improvements</u>. LENDER's inspection of the construction of the Improvements is for the <u>sole purpose of protecting and preserving the security of LENDER</u>. <u>No inspection is to be construed as a representation or endorsement that the construction of the Improvements is in fact in compliance with Plans and Specifications</u>, that the construction will be free of defective material or workmanship, or that the construction is in compliance with limitations or requirements imposed by covenants and restrictions of record or by governmental authority.

A-49, Construction Loan Agreement, Art. 2.5(d) (emphasis added).

Article 2.5(e) of the Construction Loan Agreement further provides that "LENDER has the right to disapprove defective work and materials and may in its

discretion, <u>but is not obligated to</u>, withhold disbursements until any defects are corrected in a good and workmanlike manner and in compliance with applicable law and this Agreement." A-49, Construction Loan Agreement, Art. 2.5(e) (emphasis added).

Article 3.3(a) of the Construction Loan Agreement provides:

> <u>Owner is solely responsible for selecting and retaining the Contractor at Owner's sole risk and expense.</u> The Contractor will be a general contractor licensed in the State, and will be subject to LENDER's prior evaluation and acceptance which may be granted or withheld in LENDER's reasonable discretion. <u>LENDER's right of evaluation and acceptance is given for the purpose of preserving and protecting the value of LENDER's security for the Loan, and is not an endorsement, guarantee or recommendation of the performance of the Contractor, the quality of his work or his financial condition. Owner accepts full responsibility for selection of the Contractor</u> and any subcontractors and all materials, supplies and equipment to be used in the construction of the Improvements.

A-50, Construction Loan Agreement, Art. 3.3(a) (emphasis added).

Article 7.8 of the Construction Loan Agreement provides:

> Borrower-Lender Relationship. <u>This Agreement is made on the basis of a borrower-lender relationship between Owner and LENDER. LENDER will not be considered to constitute a partner, agent or joint venturer of or with Owner or any other party associated with the construction of the Improvements or the ownership of the Property.</u> LENDER will in no manner or respect be liable or responsible, by reason of the provisions hereof, or otherwise, for the payment of any claims growing out

of the construction of the Improvements or ownership of
the Property by Owner.

A-54, Construction Loan Agreement, Art. 7.8 (emphasis added).

Thus, it would be unreasonable for Defendant to believe that the inspections were meant as a monitoring device for his benefit and/or to keep his construction project on schedule.   To the contrary, Defendant had his own architect and construction manager and multiple contractors and subcontractors.  Defendant is suing those parties in a separate state-court litigation for their apparent negligence in connection with the Project.  Defendant cannot properly seek to blame Plaintiff in this case for his professionals' deficiencies, which he is addressing elsewhere.

Furthermore, there is no evidence that Plaintiff "encouraged the borrower to repose special trust or confidence in its advice thereby inducing the borrower's reliance," which is a primary factor in finding the "special circumstances" required to fall into the asserted exception to the no lender-borrower duty rule. *See Kensey*, 306 N.J. Super. at 554-55.   The vague allegations contained in Defendant's Counterclaim are completely unsubstantiated and are contradicted (and barred) by the clear terms of the parties' agreement. *See* A-47; A-49-50; A-54, Construction Loan Agreement, Art. 2.2(h); Art. 2.3(e); Art. 2.5(d); Art. 3.3(a), (b) & (c); Art. 7.8.   Indeed, the Construction Loan Agreement specifically disclaims any

relationship between Plaintiff and Defendant other than lender-borrower. *See* A-54, Construction Loan Agreement, Art. 7.8.

Moreover, Defendant's assertions that Plaintiff induced him to enter into the Construction Loan Agreement with alleged statements that Plaintiff would supervise his construction project, and that Plaintiff relied on such statements, is barred by the parol evidence rule. The parol evidence rule provides that any previous oral representations or agreements, offered to "vary, modify, or supersede the written contract, [are] inadmissible in evidence." *Fr. Winkler KG v. Stoller*, 839 F.2d 1002, 1005 (3d Cir. 1988); *see Genesis Bio-Pharmaceuticals, Inc. v. Chiron Corp.*, 27 Fed. Appx. 94, 99 (3d Cir. 2002); *Everest Nat'l Ins. Co. v. Sutton*, No. 07-722, 2008 U.S. Dist. LEXIS 62081, *19-20, 2008 WL 3833586 (D.N.J. Aug. 11, 2008); *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 436 (D.N.J. 1998) (quoting *Filmlife Inc. v. Mal "Z" Ena, Inc.*, 251 N.J. Super. 570, 575, 598 A.2d 1234, 1236 (App. Div. 1991)).

Defendant asserts that Plaintiff allegedly insisted that Defendant invest $1 million of his funds into the Project as a prerequisite to making the Loan. Not only is this alleged "inducement" barred by the parol evidence rule, the statement is flatly contradicted by Defendant's own pleading and Declaration, in which Defendant admits that he invested the $1 million <u>before</u> even approaching MLCC to obtain the Loan. *See* A-109, Counterclaim, ¶¶ 19-22; A-152.

To support his allegations that Plaintiff had a duty to monitor the Project for Defendant's benefit, Defendant relies on a June 30, 2008 letter (A-160), which Defendant contends was sent to him (but is addressed to "Dear Builder" and is clearly in draft form, as it is not signed). The introduction of this June 30, 2008 form letter in an attempt to contradict the terms of the September 15, 2008 Construction Loan Agreement is clearly precluded by the parol evidence rule. *See, e.g., Sutton*, 2008 U.S. Dist. LEXIS 62081 at *19-20.

Additionally, Defendant submitted voluminous material (A-179 – A-937) to the Court in an attempt to demonstrate that, although almost 90% of the Loan had been advanced, the Project was only 50% completed. This assertion, even if accepted as true, is irrelevant. Under the Construction Loan Agreement, if Plaintiff becomes aware that the actual cost to complete the construction exceeds the sum of the Loan proceeds, Plaintiff has the option to require Defendant to fund such excess cost, or to deliver to Plaintiff the amount of such excess cost. (A-47, Construction Loan Agreement Sec. 2.2.) Thus, under the Construction Loan Agreement, the result of the construction cost deficiency is Defendant having to pay to cure the deficiency.

Finally, Defendant quotes the statement from *Kensey* that there purportedly is a "lengthening line of decisions" finding a duty running from lenders to their borrowers. *Kensey*, 306 N.J. Super. at 554-55. However, Defendant does not cite

23

a single decision finding a fiduciary duty between lender and borrower, much less one that included circumstances such as the ones here. In fact, the "lengthening line of decisions" since *Kensey* in 1997 have only strengthened the rule that lender-borrower relationships only in the <u>rarest and most egregious of circumstances</u> give rise to a legal duty. *See Abulkhair*, 434 Fed. Appx. at 63; *Rock*, 683 F. Supp. 2d at 331-32; *Hunter*, 750 F. Supp. 2d at 545-47; *Soto*, 2010 U.S. Dist. LEXIS 131913 at *22-23; *B.W.E. Dev., L.L.C.*, 2010 U.S. Dist. LEXIS 62543 at *8-9; *Patetta*, 2009 U.S. Dist. LEXIS 82338 at *30-32; *St. Matthew's Baptist Church*, 2005 U.S. Dist. LEXIS 46607 at *28-32; *West Deptford*, 2013 N.J. Super. Unpub. LEXIS 3022 at *9-12. We submit that Defendant's allegations, even if accepted as true, are insufficient to give rise to a duty from Plaintiff to Defendant. *See Kensey*, 306 N.J. Super. at 552-53. Therefore, there was no error by the District Court and the Order dismissing Defendant's Counterclaims should be affirmed.

## POINT II

## DEFENDANT-APPELLANT COULD NOT DEFEAT PLAINTIFF-APPELLEE'S SUMMARY JUDGMENT MOTION

### A.    Applicable Standard

As noted above, this Court reviews district court decisions on summary judgment under a *de novo* standard. *Barefoot Architect*, 632 F.3d at 826; *Giles*, 571 F.3d at 322.

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Healy v. N. Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. In so presenting, the non-moving party may not simply rest on its pleadings, but must offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

**B.    Summary Judgment Is Appropriate**

In New Jersey, the three elements a lender must establish to prevail in a foreclosure action are: (1) the validity of the loan documents (the note and mortgage); (2) the alleged default in payment; and (3) the right to foreclose. *Great Falls Bank v. Pardo*, 263 N.J. Super. 388, 394, 622 A.2d 1353-54 (Ch. Div. 1993), *aff'd*, 273 N.J. Super. 542, 642 A.2d 1037 (App. Div. 1994); *see Stonebridge Bank v. Nita Props., LLC*, 2011 U.S. Dist. LEXIS 9674, *11-12 (D.N.J. Jan. 31, 2011).

Defendant admits that he took the Loan from Plaintiff and admits the validity of the Loan Documents.  Defendant also admits that the Project was not completed in accordance with the Construction Loan Agreement, which is a clear default under the Loan Documents.  Defendant's only argument with respect to why Plaintiff should not have been granted summary judgment on its foreclosure claim is that Plaintiff allegedly "helped create the very conditions that led to the 'default.'" (Appellant's Brief, at 22.)  This alleged defense is without merit.

First, as set forth above, Plaintiff has no duty to Defendant to "conduct reasonable inspections."  Defendant's "defense" is clearly barred by the various provisions of the Construction Loan Agreement and is therefore clearly incapable of creating a genuine issue here.  *See* A-47; A-49-50; A-54, Construction Loan Agreement, Art. 2.2(h); Art. 2.3(e); Art. 2.5(d); Art. 2.5(e); Art. 3.3(a), (b) & (c); Art. 7.8.  Thus, Defendant's position that Plaintiff was obligated to conduct

reasonable inspections of the Property is incorrect under the clear terms of the Construction Loan Agreement, and Defendant's "belief" that Plaintiff had any obligation to Defendant to conduct any inspections in any manner is unreasonable.

Furthermore, Defendant's attempt to create an issue of fact based on alleged statements made by Plaintiff that "everything was 'fine' and the inspections were 'looking good'" is insufficient to defeat Plaintiff's motion. First, these alleged statements are unsubstantiated hearsay and should thus be considered inadmissible. *See Celotex*, 477 U.S. at 323. Moreover, there is no context for the alleged representations. Defendant does not even explain <u>when</u> they were allegedly made (after the first inspection?) or <u>why</u> Defendant was having these conversations with Plaintiff. Defendant did not mention these representations in his lengthy Counterclaim; rather, the purported statements "surfaced" only in response to Plaintiff's motion. Therefore, the alleged statements appear to have been created merely to avoid having summary judgment entered against Defendant.

Defendant contends that Plaintiff was "incompetent" and "reckless" with respect to inspecting the Property. However, it is Plaintiff who hired architects, construction managers and other professionals to work on the project. Plaintiff was the lender, not the construction manager. As noted, Defendant is suing his professionals in a separate state court action based on their negligent and defective

work on the project.  Defendant cannot properly blame Plaintiff for the apparent poor design and execution of the Project by <u>his</u> construction professionals.

In short, there are simply no genuine issues of material fact that would preclude Plaintiff from obtaining summary judgment here.  The Loan Documents are valid, and Defendant defaulted thereunder by not timely completing the Project.  Therefore, Plaintiff established the elements necessary to prevail on summary judgment, *see Pardo*, 263 N.J. Super. at 394.

## CONCLUSION

For these reasons, we respectfully submit that the District Court's Order dismissing Defendant's Counterclaim and granting Plaintiff summary judgment on its foreclosure claim should be affirmed.

RIKER, DANZIG, SCHERER, HYLAND
& PERRETTI, LLP
Attorneys for Plaintiff


By:  /s/Jonathan P. Vuotto
Dated:  May 27, 2015                     Jonathan P. Vuotto

## COMBINED CERTIFICATIONS

**Bar Membership**: Pursuant to Third Circuit LAR 28.3(d) and 46.1(e), I hereby certify that I am a member in good standing of the United States Court of Appeals for the Third Circuit.   My name appears on the brief submitted by Plaintiff-Appellee.

**Compliance with Fed. R. App. P. 32(a)**: I hereby certify, pursuant to Fed. R. App. P. 32(a)(7)(C), that this brief complies with the applicable type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 5,061 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 in 14-point Times New Roman font, and accordingly complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).

**Identical Compliance of Briefs**: I hereby certify, pursuant to Third Circuit LAR 31.1(c), that the text of the electronic (PDF) version of this brief (filed with the Court on the Court's electronic filing system) is identical to the text in the paper copies of the brief sent to the Court by overnight mail.

**Virus Check**: I hereby certify, pursuant to Third Circuit LAR 31.1(c), that a virus detection program (McAfee Antivirus, version 4.6.0) has been run on the electronic version of the brief and that no viruses have been detected.

/s/ Jonathan P. Vuotto
RIKER DANZIG SCHERER HYLAND &
PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

Date: May 27, 2015

## CERTIFICATION OF SERVICE

I, JONATHAN P. VUOTTO, ESQ., hereby certify as follows:

On May 27, 2015, I caused Plaintiff-Appellee's brief in opposition to Defendant-Appellant's appeal to be electronically filed, via the ECF filing system, with the United States Court of Appeals for the Third Circuit. I further certify that I caused ten (10) hard copies of the brief to be sent, via first class mail, to:

Clerk, United States Court of Appeals for the Third Circuit
601 Market Street
Room 21400
Philadelphia, PA 19106-1790

By virtue of electronically filing the aforementioned brief, the following counsel of record are hereby served:

Paul A. Sandars, III, Esq.
Kevin J. O'Connor, Esq.
Lum, Drasco & Positan, LLC
103 Eisenhower Parkway
Roseland, NJ 07068
Attorneys for Defendant-Appellant

I further certify that one (1) copy of the brief was sent, via first class mail, to the counsel listed above.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ Jonathan P. Vuotto
RIKER DANZIG SCHERER HYLAND &
PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

Date: May 27, 2015

31